**In re SPAULDING & COMPANY, Debtor.**

**SPAULDING & COMPANY, Plaintiff,**

v.

**Gordon BUCHANAN, Jr., Defendant/Third–Party Plaintiff/Appellant,**

v.

**BERMAN, ROBERTS & KELLY, Third–Party Defendant/Appellee.**

**No. 90 C 2257.**

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1990.

---

## MEMORANDUM OPINION
## AND ORDER

HOLDERMAN, District Judge:

Defendant/third-party plaintiff/appellant Gordon Buchanan, Jr. filed a third-party

complaint against third-party defendant/appellee Berman, Roberts & Kelly ("BRK") in the bankruptcy proceeding below. Bankruptcy Judge Jack B. Schmetterer dismissed Mr. Buchanan's third-party complaint for lack of subject matter jurisdiction. *In re Spaulding & Co.*, 111 B.R. 689 (Bkrtcy.N.D.Ill.1990). Because this court agrees with Judge Schmetterer that the bankruptcy court lacked jurisdiction to hear Mr. Buchanan's third-party complaint, the court affirms the decision below.

## I. BACKGROUND FACTS

The parties to this appeal do not dispute the facts relevant to this appeal, which Judge Schmetterer detailed in his thorough and well-reasoned opinion:

Spaulding & Company ("Debtor") is a debtor-in-possession under Chapter 11 of the Bankruptcy Code. Debtor filed this adversary complaint (the "Adversary Complaint") against Gordon Buchanan, Jr. ("Buchanan"). In the Complaint, Debtor alleges that a security interest and conveyance of property in favor of Buchanan was a preference under 11 U.S.C. § 547(b) and should be set aside. Subsequently, Buchanan filed a third-party complaint (the "Third–Party Complaint") against Berman, Roberts & Kelly ("BRK"), Debtor's former counsel, seeking indemnification and other relief....

On June 1, 1987 Debtor executed a note (the "Note") for approximately $2.1 million in favor of Buchanan. Debtor alleges that the Note was executed to evidence certain payments that Buchanan had previously made on Debtor's behalf to First National Bank of Chicago and Drexel Burnham Lambert, Inc. in April and May of 1987. On June 1, 1987, to secure the Note Debtor also entered into a security agreement ("the Security Agreement") which granted Buchanan a security interest in Debtor's inventory and accounts receivable. Stewart S. Peacock ("Peacock"), Debtor's President, personally guaranteed payment of the Note by Debtor.

On December 11, 1987 Buchanan filed a complaint in the Circuit Court of Cook County against both Debtor and Peacock seeking to collect under the Note and/or Peacock's guaranty. Buchanan subsequently amended his complaint to seek certain injunctive relief. That action is still pending.

On November 4, 1988 Buchanan attempted to perfect the security interest granted in the Security Agreement by filing a UCC–1 financing statement covering Debtor's inventory and accounts receivable. Shortly thereafter on November 21, 1988, Buchanan filed an involuntary petition against Debtor under 11 U.S.C. § 303. [BRK represented Debtor in the resulting involuntary bankruptcy proceeding.]

On February 3, 1989 Debtor and Buchanan reached a settlement agreement (the "Settlement Agreement") and jointly petitioned this court to dismiss the involuntary petition against Debtor. Under the Settlement Agreement, Debtor was required to turn over all collateral covered by the Security Agreement to Buchanan. In addition, Debtor agreed to indemnify Buchanan for any loss resulting from either a material inaccuracy in the representations made by it in the Security Agreement or Debtor's failure to perform under any provision of the Settlement Agreement. Settlement Agreement § 10. Among Debtor's warranties was its representation that it held "good and marketable title to all collateral." Id. § 1. Buchanan in turn agreed to pay Debtor's attorneys' fees of $50,000 to BRK. These fees were initially to be paid into an escrow account.

After reviewing the Settlement Agreement and conducting a hearing (following appropriate notice to the creditors), this court entered an order dismissing the involuntary bankruptcy petition on February 8, 1989. Pursuant to the Settlement Agreement, Debtor has since transferred its inventory (approximately 875 pieces of jewelry) to Buchanan. Buchanan denies that Spaulding's receivables were ever assigned to him.

In early March of 1989 Debtor filed a motion (later labeled a counterclaim) in the Circuit Court for Cook County seek-

ing specific performance of the Settlement Agreement. Shortly thereafter BRK moved to intervene in the state court proceedings and also separately sued Buchanan. BRK alleged in those proceedings that it is a third-party beneficiary of the Settlement Agreement, and that Buchanan breached certain obligations owed to BRK under that Agreement for non-payment of the promised $50,000.

On April 17, 1989 Debtor filed a voluntary petition in bankruptcy in this court. On July 5, 1989 Debtor filed the instant Adversary Complaint. Count I alleges that Buchanan is an "insider" who perfected his security interest within one year prior to Debtor's bankruptcy, and asserts that the security interest should be set aside as a preference under 11 U.S.C. § 547(b). Count II seeks to recover under 11 U.S.C. § 542 the inventory and accounts receivable allegedly transferred to Buchanan. In its Second Amended Answer, Buchanan asserts as an affirmative defense that through the execution of the Settlement Agreement, Debtor waived its right to assert that Buchanan's security interest was a preferential transfer.

On October 5, 1989 Buchanan filed his Third–Party Complaint against BRK. He seeks indemnification from BRK for any loss that Buchanan incurs should Debtor be able to set aside the transfer of its inventory (and alleged transfer of its accounts receivable) to Buchanan. Buchanan's theory of liability is that because BRK asserted in its state court lawsuit that it was a third-party beneficiary of the Settlement Agreement, BRK also assumed Debtor's obligations under the Settlement Agreement, including the duty to indemnify Buchanan for any loss he incurred from the breach of the Settlement Agreement. Further, Buchanan asserts that Debtor's preference action constitutes a breach of the Settlement Agreement, thereby activating Debtor's and therefore BRK's obligation under that agreement.

111 B.R. at 690–691.

In the proceedings below BRK moved to dismiss Mr. Buchanan's third-party complaint under Federal Rule of Civil Procedure 12(b)(6). Noting the court's obligation to independently determine its own jurisdiction, Judge Schmetterer correctly dismissed the third-party complaint for lack of subject matter jurisdiction.

## II. DISCUSSION

 Under 28 U.S.C. Section 157(a) this court has the power to refer bankruptcy cases to the bankruptcy judges in this district. By local rule, this particular district initially refers all bankruptcy cases to the bankruptcy judges. Rule 2.33 of the General Rules of the United States District Court for the Northern District of Illinois.

Under 28 U.S.C. Section 1334, this court (and bankruptcy courts by reference) has jurisdiction to hear four types of matters:

(1) all cases under the bankruptcy code ("title 11")—i.e., bankruptcy petitions;

(2) civil proceedings "arising under" title 11;

(3) civil proceedings "arising in" a case under title 11; and

(4) civil proceedings "related to" a case under title 11.

28 U.S.C. § 1334(b); *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987).

In response to the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in 28 U.S.C. Sections 157(b)(1) and 157(c)(1) Congress allocated the jurisdiction created by Section 1334 between "core" and "non-core" proceedings. Bankruptcy judges have full judicial power to hear core proceedings referred to them, and have limited power to hear non-core proceedings "otherwise related to a case" under the bankruptcy code. *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1238–39 (7th Cir. 1990); *Wood*, 825 F.2d at 94–95.

In this appeal Mr. Buchanan asserts several bases for the bankruptcy court's jurisdiction over his third-party complaint against BRK: (1) the "arising under" jurisdiction conferred by 28 U.S.C. Section 1334;

(2) the "arising in" jurisdiction conferred by 28 U.S.C. Section 1334; (3) the "related to" jurisdiction conferred by 28 U.S.C. Section 1334; and finally, (4) 28 U.S.C. Section 157(b)(2)'s non-exclusive listing of examples of core proceedings. None of these bases, however, support the bankruptcy court's jurisdiction over Mr. Buchanan's third-party complaint.

## A. "Arising Under" Jurisdiction[1]

■ As Judge Schmetterer correctly noted, this court's "arising under" jurisdiction includes only those proceedings that involve a cause of action "created or determined by a statutory provision of title 11." *Wood*, 825 F.2d at 96; *Diamond*, 913 F.2d at 1238–39; *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990). Mr. Buchanan's third-party complaint seeks indemnification from BRK for any loss that Mr. Buchanan may incur should Spaulding succeed in setting aside the transfer of its inventory (and, allegedly, accounts receivable) to Mr. Buchanan. Therefore, the third-party claim involves a cause of action created or determined by state law, not by title 11. It does not "arise under" title 11.

## B. "Arising In" Jurisdiction

■ This court's "arising in" jurisdiction apparently encompasses "those 'administrative' matters that arise *only* in bankruptcy cases"—matters not based on any right expressly created by title 11, but that would have no existence outside of the bankruptcy. *Wood*, 825 F.2d at 97; *Diamond*, 913 F.2d at 1238–39; *Barnett*, 909 F.2d at 981. However, as Judge Schmetterer reasoned:

Although [Mr. Buchanan's] specific indemnification action is a response to a cause of action based on substantive rights conferred on [Spaulding] under Title 11, the third-party action is by no

means an incident to the administration of the bankruptcy case.

Moreover, it is clear that Mr. Buchanan's indemnification action would have an existence outside of the bankruptcy—namely, in the state courts. This court's "arising in" jurisdiction fails to support Mr. Buchanan's third-party claim.

## C. "Related To" Jurisdiction

■ This court's "related to" jurisdiction—the broadest jurisdictional peg—also fails to sustain Mr. Buchanan's third-party complaint. A controversy is not "related to" a bankruptcy unless its resolution "affects the amount of property available for distribution or the allocation of property among creditors." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989), *citing In re Xonics, Inc.*, 813 F.2d 127, 133 (7th Cir.1987). The Seventh Circuit court of appeals has interpreted this court's "related to" jurisdiction narrowly. It has done so for two reasons:

... not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involving persons not party to the bankruptcy. Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors.

*Home Ins.*, 889 F.2d at 749. In this case, Mr. Buchanan's third-party claim does not necessarily have a financial effect either on Spaulding's estate or on the apportionment of Spaulding's assets among its creditors.

As Judge Schmetterer ably noted, if Spaulding fails in its adversary action against Mr. Buchanan, then Mr. Buchanan will have no third-party claim against BRK for indemnification. Thus, only if Spaulding succeeds in its adversary action could Mr. Buchanan's third-party claim somehow affect Spaulding's estate or the allocation of its assets among creditors.

1. To determine whether a particular matter falls within the bankruptcy jurisdiction, it is not necessary to distinguish between proceeding "arising under," "arising in," and "related to" a case under title 11. Because these references operate conjunctively to define the scope of jurisdiction, the court merely could determine whether

a matter at least is "related to" a case under title 11. *Wood*, 825 F.2d at 93. However, because it is analytically convenient (and because the bankruptcy court chose to analyze the jurisdictional issue in this way), this court shall address each jurisdictional category separately.

Assuming Spaulding prevails in its adversary action and sets aside as a preference its transfer of inventory (and, allegedly, accounts receivable) to Mr. Buchanan, then one of two things could happen: Mr. Buchanan could either fail or succeed in his third-party indemnification claim against BRK.

If Mr. Buchanan fails in his third-party claim against BRK, then there can be no effect on the size or allocation of Spaulding's estate. The result would be the same as if Mr. Buchanan had brought no third-party claim at all.

If Mr. Buchanan succeeds in his third-party action against BRK, however, there could be some effect upon the allocation of Spaulding's assets, but not upon the size of the estate. The size of Spaulding's estate will remain the same because as a result of his third-party claim Mr. Buchanan simply would receive indemnification from BRK for any losses Mr. Buchanan incurred as a result of Spaulding's success in the preference action. These losses would amount to the difference between Mr. Buchanan's losses [2] had Spaulding's preference action failed, and Mr. Buchanan's losses given that Spaulding's preference action succeeded.

Although the size of Spaulding's estate would remain unaffected by the success of Mr. Buchanan's third-party claim, as the court below recognized, there is one contingency—admittedly remote—which could affect the allocation of Spaulding's estate among its creditors: BRK could file a proof of claim against Spaulding for the cost of indemnifying Mr. Buchanan. However, as Judge Schmetterer correctly noted:

As of yet ... BRK has not filed a proof of claim in Debtor's case in response to the Third–Party Complaint or for any other purpose. Many factors go into a creditor's decision whether to file a proof of claim and this court cannot assume that such a proof of claim will be filed.... If Buchanan pursues this cause of action in state court and BRK

eventually does file a contingent claim here for reimbursement from Debtor, it may be necessary to revisit this [jurisdictional] issue. However, at this time there is no "related to" jurisdiction over the cause of action set forth in the Third–Party Complaint.

111 B.R. at 694. This court agrees with Judge Schmetterer. Given the remoteness of any possible effect upon the allocation of Spaulding's estate caused by Mr. Buchanan's third-party claim and given that BRK has not yet filed a proof of claim in Spaulding's bankruptcy case, at this time this court's "relating to" jurisdiction fails to support Mr. Buchanan's third-party claim.

D. *Section 157(b)(2)*

■ Contrary to Mr. Buchanan's argument (*see* Appellant's Brief at 17–18), the list of examples of core proceedings in 28 U.S.C. Section 157(b)(2) does not provide an independent source of jurisdiction to hear Mr. Buchanan's third-party complaint. As the court explained in *Wood:*

*Marathon* held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant encompassed proceedings too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges. The holding in *Marathon* suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by Congress; its concern is with the *placement* of that jurisdiction in non-Article III judges. In response to *Marathon,* Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter.

825 F.2d at 93 (emphasis in original) (footnotes omitted). It was through Section 157 that Congress created this statutory distinction between core and non-core proceedings. As noted in *Wood,* however, Section 157 does not enlarge the scope of this

---

**2.** "Losses" meaning the difference between Mr. Buchanan's proof of claim and Mr. Buchanan's

ultimate allocation from Spaulding's estate.

court's jurisdiction under Section 1334. It merely allocates the jurisdiction created by Section 1334 between core and non-core proceedings. *Id.,* 825 F.2d at 93, 94–97; *see also Barnett,* 909 F.2d at 978–79; 1 *Collier on Bankruptcy,* ¶ 3.01, at 3–26 (15th ed. 1990).

This court has found that Section 1334 provides no jurisdictional basis for hearing Mr. Buchanan's third-party complaint. Thus, Section 157 provides no independent jurisdictional basis for hearing that third-party complaint.

 Mr. Buchanan asserts one further jurisdictional basis worthy of comment.[3] Citing *United Steelworkers of America v. Libby, McNeill & Libby, Inc.,* 895 F.2d 421 (7th Cir.1990), Mr. Buchanan argues that the bankruptcy court retained from Mr. Buchanan's previous involuntary bankruptcy proceeding against Spaulding—the proceeding which resulted in the Settlement Agreement from which the third-party claim for indemnification springs—jurisdiction to hear the third-party claim itself. However, as the court in *United Steelworkers* made clear:

> If the parties want the district judge to *retain* jurisdiction [to enforce the terms of a settlement agreement resulting in voluntary dismissal of a suit] they had better persuade him to do so.... All that is necessary is that it be possible to infer that he did intend to retain jurisdiction—that he did not dismiss the case outright, thereby relinquishing jurisdiction.

895 F.2d at 423 (emphasis in original) (citations omitted), *quoting McCall–Bey v. Franzen,* 777 F.2d 1178, 1187–88. In this case Mr. Buchanan has failed to present any evidence from which it is possible to infer that when Judge Schmetterer dis-

missed Mr. Buchanan's involuntary bankruptcy proceeding he intended to retain jurisdiction to enforce the terms of the Settlement Agreement.[4] Indeed, Judge Schmetterer's subsequent dismissal of Mr. Buchanan's third-party complaint suggests the contrary.

Therefore, there is no jurisdictional basis for the bankruptcy court to hear Mr. Buchanan's third-party complaint. Judge Schmetterer correctly dismissed the third-party complaint for lack of subject matter jurisdiction.

## III. CONCLUSION

For the reasons stated in this memorandum opinion and order the decision of the bankruptcy court is AFFIRMED. This appeal is DISMISSED in its entirety.

---

3. Mr. Buchanan appropriately does not appeal Judge Schmetterer's discretionary refusal to exercise pendent jurisdiction over the third-party complaint.

4. Mr. Buchanan notes that in the Agreed Order dismissing the involuntary bankruptcy proceeding against Spaulding, Judge Schmetterer stated that he was "fully advised in the premises" of the order. (Appellant Brief at 15.) However,

this language merely reflects that Judge Schmetterer was familiar with the basis for dismissing the action. It is not, as Mr. Buchanan suggests, an acknowledgement that the court "knew that further enforcement [of the Settlement Agreement] might be necessary" and therefore "intend[ed] to retain jurisdiction to insure enforcement of the settlement agreement." (*Id.*)