RENKIEWICZ v ALLIED PRODUCTS CORPORATION

Docket No. 134931. Submitted July 22, 1992, at Grand Rapids. Decided October 19, 1992, at 9:15 A.M. Leave to appeal sought.

Raymond Renkiewicz, as personal representative of the estate of Eugene Renkiewicz, deceased, and Joseph and Ethel Nortley, as copersonal representatives of the estate of Mary Nortley Renkiewicz, brought a products liability action in the Charlevoix Circuit Court against Allied Products Corporation, White Farm Equipment Company, Inc., and others after the decedents died in an accident involving a farm tractor designed, manufactured, and sold by White Farm. Before the accident, White Farm had filed bankruptcy under Chapter 11 of the United States Bankruptcy Code and the bankruptcy court had confirmed a reorganization plan submitted by White Farm and its creditors under which Allied was to acquire the assets of White Farm free and clear of products liability claims. The circuit court, Richard M. Pajtas, J., granted summary disposition for Allied, ruling that the plaintiffs' claims under state law of liability by Allied as the successor of White Farm had been discharged in the bankruptcy proceeding upon confirmation of the reorganization plan. The plaintiffs appealed.

The Court of Appeals *held*:

State law governing successor liability is preempted by the Bankruptcy Code upon confirmation of a reorganization plan under 11 USC 1141(d) with respect to claims accruing before confirmation. Liability claims that accrue after confirmation are not preempted by the Bankruptcy Code. The trial court erred in granting summary disposition for Allied.

Reversed and remanded for further proceedings.

PRODUCTS LIABILITY — BANKRUPTCY — SUCCESSOR LIABILITY.

The provision of Chapter 11 of the United States Bankruptcy Code that discharges a debtor from any debt that arose before

---

REFERENCES

Am Jur 2d, Bankruptcy § 3040; Products Liability §§ 170-177.

Liability of successor corporation for punitive damages for injury caused by predecessor's product. 55 ALR4th 166.

Products liability: liability of successor corporation for injury or damage caused by product issued by predecessor. 66 ALR3d 824.

the date of confirmation of a reorganization plan does not preempt state law governing successor liability in situations involving an unaccrued future claim; thus, a business that, pursuant to a confirmed Chapter 11 reorganization plan of another business, acquires the assets of the other business free and clear of any claims for products liability may be liable under state law for a dangerous or defective product of the business it acquires where the products liability claim accrues after the bankruptcy court confirms the reorganization plan (11 USC 1141[d]).

*Charfoos & Christensen, P.C.* (by *David R. Parker, Jared P. Buckley,* and *Scott W. Rooney*), for the plaintiffs.

*Harvey, Kruse, Westen & Milan, P.C.* (by *John A. Kruse, Ronald E. Westen, Phyllis F. Snow,* and *Mark T. Rajt*), for the defendant.

Before: NEFF, P.J., and GRIBBS and CAVANAGH, JJ.

GRIBBS, J. Plaintiffs Raymond Renkiewicz, personal representative of the estate of Eugene Renkiewicz, deceased, and Joseph and Ethel L. Nortley, copersonal representatives of the estate of Mary Nortley Renkiewicz, deceased, appeal as of right an order granting summary disposition to defendant Allied Products Corporation in this products liability case. We reverse and remand for further proceedings.

In 1985, White Farm Equipment Company filed a Chapter 11 bankruptcy petition. As part of that proceeding, defendant Allied Products Corporation purchased substantially all of White Farm's assets, pursuant to an acquisition agreement executed on October 9, 1985. The acquisition agreement provided that defendant Allied would purchase reorganization assets valued at $63,194,000. Excluded assets included a cash account in the amount of

$4,600,000, certain receivables in the amount of $6,129,000, certain inventory, and White Farm's interest in certain real estate. In exchange for the transfer of reorganization assets, defendant Allied agreed to issue and deliver to White Farm 340,000 shares of a new series of preferred stock. The liquidation value per share was $50. The agreement specifically provided that the reorganization assets were to be transferred to defendant Allied free and clear of all liens, claims, and encumbrances. On October 31, 1985, the bankruptcy court ruled that White Farm was authorized to immediately consummate the acquisition agreement with Allied.

On November 11, 1987, the bankruptcy court confirmed a plan of reorganization between the official committee of unsecured creditors of White Farm and Borg-Warner Acceptance Corporation. At this time, it appears that the bankruptcy proceeding is still pending.

On December 15, 1987, plaintiffs' decedents were driving a farm tractor along a road in Charlevoix County. The tractor slid off the road and rolled over on its side, killing plaintiffs' decedents. The tractor was designed, manufactured, and sold by White Farm.

In 1989, plaintiffs filed their complaint against Allied, White Farm, and Minneapolis-Moline, alleging products liability, breach of warranty, fraud and misrepresentation, and strict liability. Plaintiffs also filed a complaint against the Charlevoix County Board of Road Commissioners, alleging nuisance and negligence.

Plaintiffs specifically alleged that Allied was the successor corporation of White Farm, and that Allied was liable under Michigan law for any and all damages incurred as a result of the sale of products by White Farm.

Defendant Allied moved for summary disposition, claiming that no liability could be imposed on it for any products liability claim based upon a defect in a White Farm product because it acquired the assets of White Farm in bankruptcy by operation of the United States Bankruptcy Code, which preempts state successor liability law. The trial court granted Allied's motion.

On appeal, plaintiffs contend that the trial court erred when it granted Allied's motion for summary disposition because the Bankruptcy Code does not preempt state law governing successor liability where plaintiffs possessed an unaccrued future claim. We agree.

This is an issue of first impression in the State of Michigan.

The trial court dismissed plaintiffs' products liability claims against Allied because the acquisition agreement between White Farm and Allied, which was approved by the bankruptcy court, specifically provided that Allied was not liable for products liability claims. The trial court held that the bankruptcy court's approval of the agreement was supreme and superseded state tort law. The trial court also relied on the following public policy reasons to support its position:

> With respect to public policy, the bankruptcy court in this case found that White Farm was not going to make that—it was basically a defunct company and that if it did not prove—approve the proposed transaction between White Farm and Allied that it would be out of business. And if that were the case, then any past and future tort claimants would be without a remedy. And so the bankruptcy court having approved this contract that provided for no liability for future product liability claims seems to me would be preferable from a public policy standpoint notwithstanding

that it may disallow a source of recovery from persons injured by the product involved.

If a prospective purchaser can't go to a defunct company that's involved in bankruptcy proceedings and purchase the assets of that company without picking up the potential products liability on those assets, then there are at least many situations where it wouldn't occur and the bankruptcy would be a Chapter 7 state bankruptcy liquidation.

So it seems to me that as a matter of public policy that the bankruptcy's action in this case would preempt Michigan law.

We will first address pertinent sections of the Bankruptcy Code. 11 USC 105 sets forth the power of the bankruptcy court. Section 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Although the bankruptcy court's powers under § 105(a) have been interpreted as being broad, they are not limitless and do not allow the court to override specific mandates of other sections of the Bankruptcy Code. *Lerch v Federal Land Bank,* 94 Bankr 998 (ND Ill, 1989). In *In re Granger Garage, Inc,* 921 F2d 74, 77 (CA 6, 1990), the United States Court of Appeals held that "[t]he bankruptcy court is a court of limited jurisdiction." At issue in this case is whether the bankruptcy court had the power to discharge plaintiffs' products liability claim when the court approved the acquisition agreement and confirmed the reorganization plan.

11 USC 101(5)(A) defines a claim as a

> right to payment, whether or not such right is
> reduced to judgment, liquidated, unliquidated,
> fixed, contingent, matured, unmatured, disputed,
> undisputed, legal, equitable, secured, or unsecured. ·
> . . .

A broad definition of claim is central to the policy of a fresh start for Chapter 11 debtors and permits debtors to receive the broadest possible relief in bankruptcy court because liability on a claim can be discharged only by confirmation of the reorganization plan under § 1141(d). *In re Chateauguy Corp,* 87 Bankr 779, 795 (SD NY, 1988), rev'd on other grounds *Pension Benefit Guaranty Corp v LTV Corp,* 496 US 633, 110 S Ct 2668; 110 L Ed 2d 579 (1990); *Johnson v Home State Bank,* 501 US —; 111 S Ct 2150; 115 L Ed 2d 66 (1991). Similarly, the term "debt" is to be given a broad and expansive reading. *In re Chase & Sanborn Corp,* 904 F2d 588 (CA 11, 1990). Debt is defined as "liability on a claim." 11 USC 101(12).

11 USC 1141(d) provides that the confirmation of a reorganization plan discharges the debtor from any debt that arose before the date of confirmation. Section 1141 does not discuss whether debts that arise after the date of confirmation are discharged. The rationale behind discharging preconfirmation claims is that the Bankruptcy Code grants the good-faith debtor freedom from prepetition legal obligations and promises creditors in the confirmed plan of reorganization that a realistic possibility of payment exists. *In re Production Plating, Inc,* 90 Bankr 277, 284 (ED Mich, 1988). Creditors whose claims arise before confirmation will have an opportunity to take part in the reorganization plan and a chance to obtain some sort of remedy.

In the trial court, Allied in its motion for summary disposition, placed great emphasis on the case of *In re White Motor Credit Corp,* 75 Bankr 944 (ND Ohio, 1987), for the proposition that the Bankruptcy Code preempts state laws regarding successor liability. In that case, White Motor filed a voluntary petition under Chapter 11. During the reorganization proceedings, another company, Volvo, agreed to purchase substantially all of White Motor's remaining truck business assets. The court determined that the sale was appropriate and entered an order approving the purchase agreement. The purchase agreement provided that Volvo would not assume any liabilities of White Motors for personal injuries or property damage because of alleged negligence, breach of warranty, or products liability. Despite the provision, lawsuits were filed against Volvo for successor liability resulting from its purchase of the White Motor truck assets. The tort claims arose before plan confirmation and were within the scope of the debtor's discharge. Thus, at issue was "whether state successor liability law [was] preempted by federal law to the extent the claims underlying the successor's liability have been discharged under a plan of reorganization." *White Motor, supra* at 950. The bankruptcy court held that federal bankruptcy law preempts state laws imposing successor liability, and stated:

> The liability which state law imposes through successor liability is that of the manufacturer. The federal purpose of final resolution and discharge of corporate debt is clearly compromised *by imposing successor liability on purchasers of assets when the underlying liability has been discharged under a plan of reorganization.* Moreover, successor liability is precluded by Section 1141(c) which specifically frees debtor's property from creditors' claims.

Successor liability in these circumstances has, therefore, been pre-empted by the Bankruptcy Code.

The effects of successor liability in the context of a corporate reorganization preclude its imposition. The successor liability specter would chill and deleteriously affect sales of corporate assets, forcing debtors to accept less on sales to compensate for this potential liability. This negative effect on sales would only benefit product liability claimants, thereby subverting specific statutory priorities established by the Bankruptcy Code. [*Id.* at 950-951. Emphasis added.]

The present case is clearly distinguishable from *White Motor.* Here, plaintiffs' claims arose after White Farm filed the petition in bankruptcy and after the bankruptcy court confirmed the reorganization plan. In *White Motor,* on the other hand, the decision dealt specifically with claims that arose before plan confirmation. The distinction is important because under 11 USC 1141(d) only debts that arise before the date of the confirmation of the reorganization plan may be discharged. The *White Motor* court expressly limited its decision to claims that arise before confirmation and are consequently "discharged under a plan of reorganization." *Id.* at 950. In this case, the record clearly indicates that plaintiffs did not have a claim at the time the reorganization plan was confirmed because their claims did not arise until December 15, 1987, the date of the decedents' fatal accident. In Michigan, a products liability claim does not accrue until an injury occurs. *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972); *Larson v Johns-Manville Sales Corp,* 427 Mich 301; 399 NW2d 1 (1986). The reorganization plan was confirmed on November 5, 1987, approximately one month before the acci-

dent occurred. In accordance with § 1141(d) of the Bankruptcy Code, plaintiffs' claims did not arise before the date of the confirmation, and therefore were not dischargeable by the bankruptcy court.

We find *In re Mooney Aircraft, Inc,* 730 F2d 367 (CA 5, 1984), persuasive because it addressed claims that arose after the sale of assets and after the bankruptcy estate was closed. In that case, Mooney Aircraft, Inc., and Mooney Corporation, Inc. (Mooney-Texas), filed applications for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. On March 14, 1969, American Electronics Laboratories, Inc., purchased all the business assets of Mooney-Texas free and clear of all claims, liabilities, liens, encumbrances, mortgages, and security interests. Subsequently, the assets were sold to the plaintiff, Mooney Aircraft Corporation (Mooney-New Jersey). The bankruptcy estate was closed on March 13, 1972. On November 24, 1973, the defendants' decedents were killed when the aircraft they were flying lost a wing in flight and crashed. The aircraft was manufactured by Mooney-Texas. In November 1974, the defendants filed wrongful death actions against Mooney-New Jersey. On November 7, 1990, Mooney-New Jersey filed an application in bankruptcy court to reopen the estate of Mooney-Texas and a complaint to enjoin the state court proceedings. The bankruptcy court entered an order permanently enjoining the defendants from pursuing their claims. The district court reversed and Mooney-New Jersey appealed. On appeal, the United States Court of Appeals found that the defendants' claims did not arise until more than five years after the sale and more than a year after the bankruptcy estate was closed. The court held that "[t]he bankruptcy court could not sell free and clear of claims asserted by the victims of an accident which did not occur

until five years later." The court concluded that the bankruptcy court lacked jurisdiction over Mooney-New Jersey's complaint. 730 F2d 375.

Although *Mooney* does not address Chapter 11, the facts in *Mooney* are similar to the facts in this case. Here, the trial court held that the bankruptcy court had jurisdiction over plaintiffs' claims and that plaintiffs' claims were discharged when the bankruptcy court approved the acquisition agreement that provided that the reorganization assets would be transferred to defendant Allied free and clear of all liens, claims, and encumbrances. The trial court failed to take notice of the fact that plaintiffs' claims did not arise until after the confirmation of the acquisition agreement and the plan of reorganization. The *Mooney* Court specifically stated that the bankruptcy court could not sell free and clear of claims asserted by victims of an accident that did not occur until after the confirmation of the sale. In accordance with *Mooney,* the bankruptcy court in the present case did not have jurisdiction to discharge plaintiffs' claims under the acquisition agreement because plaintiffs' claims did not arise until more than a month after the confirmation of the sale of assets and approximately two years after the authorization of the sale of assets.

Because the reorganization plan was confirmed before the time plaintiffs' claims arose, we find plaintiffs' claims cannot be discharged by the bankruptcy court under § 1141(d). As a result, the trial court erred when it granted defendants' motion for summary disposition, holding that the bankruptcy court's ruling preempted state law governing successor liability in situations involving an unaccrued future claim.

The question we must now answer is whether a record might be developed upon which reasonable

minds could differ regarding the existence of successor liability. However, when the trial court granted defendants' motion for summary disposition on the ground that the Bankruptcy Code was supreme and superseded state tort law, it held that there was no need to address whether a continuity of enterprise existed between White Farm and defendant Allied under the theory of successor liability. Because we find that the trial court erred in granting Allied's motion for summary disposition, we reverse and remand to the trial court for further proceedings.

Reversed and remanded for further proceedings. We do not retain jurisdiction.