**In re CARY METAL PRODUCTS, INC., an Illinois Corporation.**

**ZERAND–BERNAL GROUP, INC., formerly known as Zerand Corporation, Plaintiff,**

**v.**

**Ronald L. COX and Beth Ann Cox, Rockwell International Corp., and Rockwell Graphics Systems, Inc.**

**Bankruptcy Nos. 85 B 9480, 92 A 0901.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 22, 1993.

928

Jerome S. Wald, Tishler & Wald, Ltd., Chicago, IL, for Cary Metal Products.

Russell J. Ober, Jr., Meyer, Unkoric & Scott, Pittsburgh, PA, Michael R. Levinson and Gus A. Paloian, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Zerand–Bernal Group, Inc.

David S. Curry and N. Nevill Reid, Mayer, Brown & Platt, Chicago, IL, for Rockwell Graphics Systems, Inc.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter comes before the Court on Rockwell International Corporation and Rockwell Graphics Systems, Inc.'s (collectively referred to as "Rockwell") motion to dismiss or, in the alternative, to abstain from hearing Zerand–Bernal Group, Inc.'s complaint to enjoin a products liability action. Essentially, Rockwell contends that this Court lacks jurisdiction to entertain the pending complaint. After considering the parties' pleadings and arguments of counsel, the Court hereby grants Rockwell's motion to dismiss.

### FACTS and BACKGROUND

On July 26, 1985, Cary Metal Products, Inc. ("Debtor") filed a voluntary petition for reorganization under Chapter 11. Bankruptcy Judge Charles B. McCormick approved the sale of a substantial portion of the Debtor's assets to Zerand–Bernal Group, Inc. ("Zerand") on December 23, 1985. The case was later reassigned to the undersigned who subsequently confirmed the Debtor's liquidating plan on January 22, 1987. The present dispute involves the language used in the sale documents and the order confirming the joint plan of reorganization.

The relevant language of the sale agreement provides that the Court is to reserve jurisdiction to enjoin any product liability claims existing prior to the sale closing or arising after but relating to sales made by the Debtor prior to the sale closing. Additionally, the joint plan of reorganization provides in part for the Court to retain exclusive jurisdiction *after* confirmation to enforce the sale agreement. Based upon that language, Zerand seeks to have this Court enjoin a product liability action commenced on August 5, 1991, by Ronald L. Cox and Beth Ann Cox in the United States District Court for the Western District of Pennsylvania (the "Pennsylvania Action") for injuries allegedly suffered by Ronald Cox. Ronald and Beth Ann Cox named Rockwell as defendants in their capacity as intermediate sellers of certain equipment to the Debtor. Rockwell intends to seek indemnification from Zerand for any attendant liability, as a successor to the Debtor.

Initially, Zerand filed a motion in the Pennsylvania Action to stay the proceedings pending Zerand's filing a proceeding before this Court to determine its liability. The Pennsylvania District Court denied Zerand's request.[1] On July 1, 1992, Zerand filed the instant adversary proceeding requesting this Court enjoin Ronald L. Cox and Beth Ann Cox from further prosecuting the Pennsylvania Action against Zerand. Zerand further requests this Court direct Ronald L. Cox and Beth Ann Cox to dismiss the action as it relates to Zerand.

## DISCUSSION

The gist of Rockwell's motion challenges the Court's ability to exercise jurisdiction over Zerand's adversary proceeding. The Seventh Circuit has cautioned parties that an initial grant of federal jurisdiction is not necessarily permanent: "[J]urisdiction does not follow the property. It lapses when property leaves the estate ... Otherwise anyone who could trace his title to a bankruptcy could invoke federal jurisdiction to settle disputes affecting that property." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987) (citing *In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182, 1188 (7th Cir.1986)). The facts clearly establish that the parties consummated the sale of the Debtor's assets in 1985—at that time the property left the estate.

Rockwell relies heavily upon the *Xonics* decision in arguing that this Court relinquished jurisdiction to settle disputes among non-debtor parties regarding that property, including the Cox's action. Zerand disagrees and argues two scenarios. Primarily, Zerand contends this Court has jurisdiction *arising under* Title 11 by virtue of the plan language reserving jurisdiction and because the present dispute involves an interpretation of the order approving the sale of assets pursuant to Section 363. In the alternative, Zerand argues it has an indemnification claim or action to rescind the sale which according to Zerand impacts upon the estate, and thus confers *related to* jurisdiction upon this Court. In either instance, according to Zerand, the Court has jurisdiction to entertain the present proceeding. In order to clarify the issue of jurisdiction and whether it exists with regard to the present proceeding, the Court will begin with an analysis of 28 U.S.C. § 1334.

The first step to determining jurisdiction requires a bankruptcy judge to ascertain whether jurisdiction exists under Section 1334. *In re Spaulding & Co.*, 131 B.R. 84 (N.D.Ill.1990). That section provides that district courts shall have original but not exclusive jurisdiction over all Title 11 civil proceedings, and states in relevant part:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have orig-

---

1. The Pennsylvania District Court held the following:

 [U]pon consideration of the Motion for Stay filed by defendant Zerand Corporation, and the responses thereto, it is hereby ORDERED, ADJUDGED and DECREED that motion be and hereby is DENIED because it is unlikely that the Bankruptcy Court for the Northern District of Illinois would have subject matter jurisdiction over a product liability suit involving a party who is not the debtor in bankruptcy.

 (Rockwell's Motion Exhibit A).

inal but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b) (1988). Local Rule 2.33(A)[2] refers any such action to the bankruptcy judges for resolution. As noted, the parties in this proceeding spend a significant amount of their resources arguing the issue of "arising under" jurisdiction. Therefore, the Court will address this type of jurisdiction first.

### Jurisdiction "Arising Under" Title 11

Section 1334 jurisdiction encompasses proceedings "arising under" Title 11 which are commonly referred to as causes or actions "created or determined by a statutory provision of title 11." *Spaulding,* 131 B.R. at 88. Zerand advances two theories in support of its contention that this Court has "arising under" jurisdiction to hear this proceeding. Zerand first contends this Court *reversed* jurisdiction to hear the present proceeding and points to four documents as establishing this reservation of jurisdiction.[3] Zerand's argument fails because the Court's confirmation order by itself cannot confer jurisdiction.[4] The Court cannot reserve what does not exist.

Section 1142(b) governs a bankruptcy court's post-confirmation jurisdiction to implement Chapter 11 plans and provides that:

[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). The plain text leaves little doubt that post-confirmation jurisdiction exists to the extent necessary to consummate the plan. The problem that arises with which courts have had to grapple involves balancing the need to retain jurisdiction post-confirmation with ending the reorganization process at some point. *See In re Greenley Energy Holdings of Pennsylvania,* 110 B.R. 173, 180 (Bankr. E.D.Pa.1990) and collected citations dis-

---

2. Local Rule 2.33(A) provides:
 Pursuant to 28 U.S.C. § 157(a), any and all cases under Title 11 U.S.C. and any and all proceedings arising under Title 11 U.S.C. (sic) or arising in or related to any case under Title 11 U.S.C. are referred to the bankruptcy judges of this District.
 United States District Court Northern District of Illinois Local Rule 2.33(A) (1992).

3. Zerand points first to the "Order Confirming Joint Plan of Reorganization" and second to the Joint Plan of Reorganization in which Article XII of the latter provides in pertinent part that:
 [t]he Court shall retain exclusive jurisdiction after confirmation ... to enforce the agreement concerning the sale of assets to Zerand Corporation in accordance with an order dated December 23, 1985....
 (Complaint Exhibit C). Third, Zerand incorporates the Order approving the sale of the Debtor's assets entered by then presiding Judge Charles B. McCormick, which states that the "Court reserves jurisdiction to enforce the Agreement herein approved in accordance with its terms and conditions." (Complaint Exhibit A, ¶ 5). Fourth and finally, Zerand highlights the sale agreement language from which Zerand's entire argument stems. That language provides in pertinent part that Zerand's obligations are subject to the:

Court entering an order approving the sale of all assets purchased hereunder free and clear of any liens, claims or encumbrances of any sort or nature and confirming all of the terms and conditions of this Agreement. *The Court is to reserve jurisdiction with the power to enjoin persons from seeking any reimbursement or making claims against Purchaser with regard to the Debtor's assets purchased hereunder which may have existed prior to the Closing or relate to the business previously conducted by Debtor and to enjoin any products liabilities claims arising prior to the Closing or relating to sales made by Debtor prior to the Closing.*
(Complaint Exhibit B) (emphasis added). Four documents and seven years later, Zerand concludes these documents and the above-referenced language establish that the Court reserved jurisdiction to hear the present adversary, and thus is authorized to grant the relief requested.

4. Further, the Court's order confirming the joint plan of reorganization in no way expressly retains jurisdiction to administer the underlying proceeding. The Court notes the plan of reorganization, however, is treated as merging into the confirmation order.

cussing post-confirmation jurisdiction. The Court finds the literal language of Section 1142(b) provides that particular point-in-time when post-confirmation jurisdiction ceases, the point at which a creditor's action will not affect the administration of the plan.

■ The whole scheme of bankruptcy administration rests on a swift, efficient resolution of claims in order that a debtor's business might continue or at least attempt to be salvaged in a timely manner while protecting the interests of the creditors. *In re Grabill,* 976 F.2d 1126 (7th Cir.1992). Through a confirmed plan of reorganization or, in some instances, liquidation, a bankruptcy court adjusts the debtor/creditor relationships in various assets of the debtor. Administering any such restructuring absent court enforcement, however, would be futile hence Section 1142, which enables bankruptcy courts to ensure that parties participating in the bankruptcy process have their interests, as provided for under the plan of reorganization, protected. Once a plan has been confirmed, a bankruptcy court's post-confirmation jurisdiction contracts, liberating the participants to go about their business without further bankruptcy court supervision or approval. *See* 11 U.S.C. § 1141.

■ Why should the bankruptcy court continue to monitor property transferred in accord with the terms of the plan of reorganization? The purpose of post-confirmation jurisdiction is limited to protecting the court's confirmation decree, preventing interference with the execution of the plan, and aiding otherwise in the plan's operation. Absent an impact upon the administration of the plan of reorganization, creditors have no standing to invoke a bankruptcy court's limited post-confirmation jurisdiction.

■ This Court is without power to give Zerand what it desires because the plan has been completed and no assets remain. There is nothing left to be impacted, there is nothing left to be allocated and there is nothing left to be done. This Court has monitored the full consummation of the plan of reorganization, and to expand its authority to do otherwise because the plan of reorganization so authorizes would eviscerate the limited jurisdiction Congress intended bankruptcy courts to exercise post-confirmation.

■ Alternatively, Zerand argues this Court has jurisdiction to construe its order authorizing the sale of the Debtor's assets free and clear of all claims pursuant to Section 363,[5] and cites *In re Korhumel Industries, Inc.,* 103 B.R. 917 (N.D.Ill.1989) for support. In *Korhumel,* the trustee in bankruptcy sold assets to a third party " 'free and clear of all liens, claims and encumbrances' except from certain specified liabilities." *Korhumel,* 103 B.R. at 919. A plaintiff who had been injured while using one of the debtor's products brought suit against the purchaser after the sale. The purchaser then sought a declaratory judgment from the bankruptcy court that it was not liable to the plaintiff. The bankruptcy court dismissed the purchaser's complaint finding a lack of jurisdiction to entertain same. The district court reversed.

The district court focused on the type of jurisdiction the adversary proceeding conferred upon the court. The *Korhumel* court observed that the purchaser's complaint sought the bankruptcy court's interpretation of its order allowing the sale of the debtor's assets pursuant to Section 363 "free and clear" of all encumbrances, which the court concluded arose under Title 11. *Id.* at 922–23. Zerand contends that

---

**5.** Section 363 provides in relevant part:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

the same situation exists here. The *Korhumel* facts are similar though not identical.[6]

Upon closer review, the Court finds the *Korhumel* reasoning distinguishable in light of the *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991) decision. In *Pettibone*, the plan of reorganization listed all tort actions, including those filed in violation of the automatic stay, as claims passing through bankruptcy. Plaintiffs who had filed actions during bankruptcy (in violation of the automatic stay) had 30 days after the termination of the stay to refile their cases in the appropriate forum. Three such cases were not refiled within the 30 days. The debtor requested the bankruptcy court find these three cases had been filed in violation of the automatic stay, and thus void. The debtor reasoned, if the automatic stay makes the filing void, then no suits are pending against it, and any future filings would be untimely under state law. The bankruptcy court agreed but lifted the stay retroactively, which implied the tort suits were timely after all.

On appeal, the Seventh Circuit held that the bankruptcy court lacked jurisdiction to entertain the debtor's request to determine the validity of the filing of the three suits. 935 F.2d at 122. Recognizing a bankruptcy court's post-confirmation jurisdiction is limited to enforcing the plan of reorganization, the Court of Appeals explained that the issue of whether the three non-filed cases were originally filed in violation of the automatic stay had no impact on the consummation of the plan. *Id.* Critical was the fact that the actions passed through bankruptcy, and thus had no impact on the administration of the plan.

■ Applying the *Korhumel* reasoning to the *Pettibone* facts, the purported violation of the automatic stay in *Pettibone* would have given the bankruptcy court "arising under" jurisdiction because the violation was created, if not determined, by a statutory provision of Title 11—Section 362. The Seventh Circuit's reasoning, however, in no way recognizes such a broad-continuing grant of post-confirmation jurisdiction.[7] Rather, the *Pettibone* decision circumscribes this Court's jurisdiction in order to allow the parties to go about their business without further supervision, approval or protection of the bankruptcy court so long as their actions do not interfere with the administration of the plan. Simply stated, once a plan is confirmed the parties exit the protection of bankruptcy and enter the environment of applicable non-bankruptcy law to protect their interests. *See* 11 U.S.C. § 1141.

This Court finds the *Pettibone* reasoning most persuasive in light of the context in which the Court of Appeals addressed the issue of post-confirmation jurisdiction. As the *Pettibone* court acknowledged, it could have easily treated the bankruptcy court's modification of the stay as violating 28 U.S.C. § 157(b)(5) which precludes a bankruptcy court from adjudicating tort claims. *Pettibone*, 935 F.2d at 123. Rather than limiting its decision to that provision, the Seventh Circuit used the case as an opportunity to delineate the bounds of post-confirmation jurisdiction.

■ The *Pettibone* reasoning is most applicable to the present proceeding. In 1985, the Court authorized the sale of the Debtor's assets to Zerand. Now, seven years later, Zerand seeks a determination from this Court that the Cox's should be

---

6. *Infra* n. 7.

7. The *Pettibone* reasoning would not have deprived the *Korhumel* court of jurisdiction. In *Korhumel*, the assets had been sold and a plan confirmed, but dissimilar to *Pettibone*, the purchaser's potential indemnification claim would have reduced the estate and thereby affect the debtor's creditors. *Korhumel*, 103 B.R. at 924. Thus, the action in *Korhumel* was at least related to the underlying bankruptcy case. *See Xonics*, 813 F.2d at 132. In *Pettibone*, the Court observed that if the aggregate of all tort claims

exhausted the insurance coverage then the creditors would be adversely affected. 935 F.2d at 123. The *Pettibone* debtor, however, failed to contend that exhaustion was likely. *Id.* Thus, the Court found the action was not "related to" the underlying bankruptcy case. *Id.; but see In re Spaulding & Co.*, 131 B.R. 84 (N.D.Ill.1990) (noting a third party action where one party has a potential indemnification claim is not related to underlying bankruptcy case unless party files a claim against the debtor for indemnification).

enjoined from prosecuting their tort claim because of the language used in the sale order. As unhappy as Zerand is about the recent turn of events, it must look elsewhere for its interpretation, which in this case is the Pennsylvania District Court. Section 1142(b) does not permit this Court to instruct the Pennsylvania judge on how to understand the effect of the sale order language or what impact it has upon the pending tort claim. Nor does it allow this Court to revisit a pre-confirmation decision which has no impact on the administration of the estate post-confirmation. Once the property leaves the estate, any disputes concerning that property are best left to other forums [8]—bankruptcy is not a forum of first or last resort.

### Jurisdiction "Related To" Underlying Bankruptcy Case

Alternatively, Zerand argues that the Court has jurisdiction to hear the present proceeding because it is "related to" Title 11. Jurisdiction "related to" the underlying bankruptcy case provides the broadest grant of jurisdiction because it allows bankruptcy courts to adjudicate actions not created by or determined under Title 11 nor involving the debtor as a litigant. This type of jurisdiction allows a bankruptcy court to hear disputes between a debtor's creditors or non-debtor parties if those disputes "involve property of the estate or if resolving the creditors' intramural squabble will affect the recovery of some other creditor." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) (quoting *In re Kubly*, 818 F.2d 643, 645 (7th Cir.1987)). Because this grant of jurisdiction could entail many non-bankruptcy actions, the Seventh Circuit has narrowly interpreted a bankruptcy court's jurisdiction related to the underlying bankruptcy case:

> not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involv-

ing persons not party to the bankruptcy. Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors.

*Home Ins.*, 889 F.2d at 749.

■ In this proceeding, Zerand seeks to enjoin the Pennsylvania Action which does not involve property of the estate. The Seventh Circuit has counseled that absent an impact on a creditor's interest or a dispute involving a debtor's asset, the bankruptcy court lacks the requisite jurisdiction to hear a proceeding as related to the underlying bankruptcy case. *Xonics*, 813 F.2d at 131. Long ago, the Debtor relinquished any interest in its property once the parties consummated the sale of the Debtor's assets. Further, the plan of reorganization has been fully completed leaving no assets to be administered. Consequently, the present proceeding will have no impact upon property of the estate or any other creditor's interest. The facts clearly demonstrate, therefore, that this Court lacks the requisite jurisdiction to entertain Zerand's complaint as a proceeding related to the underlying bankruptcy case.

■ Zerand argues, however, that it may assert an action for indemnity or to rescind the sale if this Court does not enjoin the Pennsylvania Action. According to Zerand, either action will impact the estate. As this Court explained in *In re Salem Mills*, 148 B.R. 505 (Bankr.N.D.Ill.1992), a mere allegation of a potential claim or action is insufficient to bestow jurisdiction. Critical to conferring jurisdiction is a tangible impact upon the administration of the estate. The filing of an actual proof of claim (based upon potential damages arising from the third-party action) is the first step to any such determination because it permits a bankruptcy court to contingently value that claim's impact upon the estate. *Salem*, at 509. Assuming an impact, a bankruptcy court would have jurisdiction to entertain the third-party action as a related

---

**8.** *See Renkiewicz v. Allied Products Corp.*, 196 Mich.App. 309, 492 N.W.2d 820 (1992) wherein the state court analyzed the extent to which successor liability was pre-empted by a bankruptcy court's approval of the sale of a debtor's assets free and clear of all claims. The *Renkiewicz* decision demonstrates that bankruptcy courts are not the only tribunals capable of interpreting provisions of Title 11.

proceeding. *Id.* In this case, however, no claim has been filed. Even if a claim were filed, it is not likely that this Court would exercise "related to" jurisdiction over the third-party proceeding because the plan has been fully completed. Thus, the filed claim could have no conceivable impact on either the amount of property available for distribution or the allocation of property among creditors. If the filed claim can have no impact on the administration of the estate, then certainly the third-party action can have no relation to the underlying case. That situation, however, is not before this Court because Zerand failed to submit such a proof of claim which alone is sufficient to deny this Court "related to" jurisdiction.

### Core Jurisdiction

 Both parties confuse the issue of whether core jurisdiction exists for purposes of allowing the Court to hear the present proceeding. Contrary to the parties tacit assumption, 28 U.S.C. § 157(b)[9] does not provide an independent source of jurisdiction to hear Zerand's complaint. It merely allocates the jurisdiction created by 28 U.S.C. § 1334 between core and non-core proceedings. *Spaulding*, 131 B.R. at 90. As explained, the Court has found that 28 U.S.C. § 1334 provides no jurisdictional basis for hearing Zerand's complaint. Therefore, the Court has no additional ba-

sis for entertaining Zerand's complaint under 28 U.S.C. § 157.

### CONCLUSION

Based on the foregoing, the Court finds that the present proceeding neither arises under Title 11 nor related to the underlying bankruptcy case. Therefore, this Court lacks jurisdiction to entertain same. Because this Court lacks jurisdiction to hear Zerand's adversary, the Court need not address the issue of abstention. The Court grants Rockwell's motion to dismiss this adversary.

---

9. 28 U.S.C. § 157(b) provides in relevant part:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmation of plans;

(M) determinations of the validity, extent, or priority of liens;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b).