**In re FEIFER INDUSTRIES, Debtor.**

**John J. GOGER, as Trustee in bankruptcy for the Estate of Feifer Industries, Inc., Plaintiff,**

**v.**

**The MERCHANTS BANK OF ATLANTA, McCoy Lumber Company, Standard Chartered Bank, State of Georgia Department of Labor, State of Georgia Department of Revenue, March Construction Company, and Continental Timber Company Inc., Feifer & Associates Inc., Atlanta Contracting Corporation, Allan Feifer and Bernard Feifer, Defendants.**

**STANDARD CHARTERED BANK, Plaintiff–in–Counterclaim and Third–Party–Plaintiff,**

**v.**

**FIRST UNION NATIONAL BANK OF GEORGIA, Third–Party Defendant.**

**No. 90–07472–SWC.
Adv. No. 91–6089.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 10, 1991.

John J. Goger, Kirwan, Goger, Chesin & Parks, Atlanta, Ga., for John J. Goger.

R. Lee Brooks, Alston & Bird, Atlanta, Ga., for Standard Chartered Bank.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is the motion of First Union National Bank of Georgia ("First Union") to dismiss the third-party complaint of Standard Chartered Bank ("Standard Chartered") on the ground that the court lacks subject matter jurisdiction. The court will grant First Union's motion based on the following findings and conclusions.

## FACTS

Standard Chartered and First Georgia Bank ("First Georgia") entered into a security agreement with Feifer Industries ("Debtor") in which Debtor granted Standard Chartered and First Georgia a joint security interest in virtually all of Debtor's assets. First Georgia and Standard Chartered were each named as secured parties on a UCC–1 financing statement ("financing statement"), filed on June 11, 1986. The subject UCC–1 was terminated on March 20, 1987 by the filing of a termination statement.

In December 1990 the Chapter 7 Trustee of this Debtor ("Trustee") sold substantially all of Debtor's assets, with all liens and encumbrances attaching to the proceeds of sale. On February 7, 1991, the Trustee filed his complaint, which named as defendants each creditor that claimed an interest in any of the assets. The Trustee seeks, among other things, a determination of the validity and priority of defendants' respective interests. In his complaint the Trustee alleges that First Union (First Georgia's successor in interest) terminated the UCC–1, and as a result Standard Chartered's security interest was unperfected at the filing of Debtor's case, and Standard Chartered's claim is unsecured.

Standard Chartered answered the Trustee's complaint and filed its third-party complaint on March 11, 1991. The third-party complaint alleges that First Union intentionally or negligently terminated the financing statement and seeks as damages an amount equal to the proceeds of the collateral Standard Chartered would have received had First Union not terminated the financing statement. First Union answered on April 10, 1991 and by motion, filed June 14, 1991, moved to dismiss Standard Chartered's third-party complaint due to the court's lack of subject matter jurisdiction.

## DISCUSSION

The district court has subject matter jurisdiction, *inter alia*, over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). All such cases and proceedings may be referred by the district court to the bankruptcy court under 28 U.S.C. § 157(a). By its order of July 12, 1984, the District Court for the Northern District of Georgia has referred all such cases and proceedings to the bankruptcy judges of this court.

"[I]t is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11 (because) [t]hese references operate conjunctively to define the scope of jurisdiction." *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987); *see also In re Lemco Gypsum Inc.*, 910 F.2d 784 (11th Cir.1990). Therefore, it is only necessary to determine

if Standard Chartered's claim is "related to" the Debtor's case.

■ A proceeding is "related to" a bankruptcy case if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.,* 910 F.2d at 788 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). "The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of 1334(b)." *In re Lemco Gypsum, Inc.,* 910 F.2d at 789. Nor is it sufficient to confer subject matter jurisdiction under the "related to" standard.

■ Standard Chartered's third-party complaint seeks indemnity from First Union for any loss Standard Chartered may suffer due to a loss of secured status. The resolution of Standard Chartered's claim against First Union will not have any effect on the Debtor's assets, the size or type of any of the claims asserted against the estate, and will not impact the handling or administration of the Debtor's case. The court concludes, therefore, that it lacks subject matter jurisdiction over the third-party complaint pursuant to § 1334(b).

This does not, however, end the court's inquiry. Standard Chartered contends in the alternative that under 28 U.S.C. § 1367 the court has supplemental jurisdiction of its third-party complaint. Section 1367 grants to the district courts supplemental jurisdiction over any state claim that forms "part of the same case or controversy" as a claim over which the court has jurisdiction. 28 U.S.C. § 1367(a).

First Union asserts that while Congress granted the district court supplemental jurisdiction over certain related claims, because the bankruptcy court is a court of limited jurisdiction, Congress did not intend the grant of supplemental jurisdiction to extend to it. Further, First Union asserts that the order of reference for the North-

ern District was not intended to invest this court with ancillary and pendent jurisdiction.

■ The weight of authority, however, indicates otherwise. Prior case law has upheld the power of bankruptcy courts to hear claims that are ancillary or pendent to the main case. *Melamed v. Lake County Nat'l Bank,* 727 F.2d 1399 (6th Cir.1984); *In re WWG Industries,* 44 B.R. 287 (Bankr.N.D.Ga.1984); *In re Petrolia,* 79 B.R. 686 (Bankr.E.D.Mich.1987). It is, therefore, the court's conclusion that, although silent on this issue, the district court's July 12, 1984 order of reference was not intended to and did not abrogate prior case law. This court construes the district court order of reference broadly as including a reference of all bankruptcy jurisdiction of the district court, except that which it may not constitutionally delegate. Further, there is nothing in § 1367 that suggests bankruptcy courts lack supplemental jurisdiction over such claims. The court concludes, therefore, that it may exercise supplemental jurisdiction where appropriate.

■ First Union also contends that in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) the Supreme Court prohibited the use of ancillary and pendent jurisdiction if it would involve the joining of a party not otherwise involved in the litigation. However, in enacting § 1367 Congress expressly overruled *Finley* by providing that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." [1] Thus, the court finds that *Finley* is not controlling in this case, and Standard Chartered may join First Union as a third-party defendant to the Trustee's suit if Standard Chartered's claim is "part of the same case or controversy."

Due to its recent enactment there has been virtually no judicial interpretation of § 1367. Therefore, it is helpful to consider 28 U.S.C. § 1367, keeping in mind the stan-

---

1. 28 U.S.C. § 1367(a); *see also* Act of October 27, 1990, Pub.L. No. 101–650, 1990 U.S.C.C.A.N., 6873–6876.

dards and policy considerations enunciated in prior case law.

Prior to enactment of § 1367, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) was the leading authority for application of the doctrine of ancillary or pendent jurisdiction.[2] In *Gibbs* the Court held that if a defendant's conduct has given rise to both state and federal remedies, a federal court may resolve issues raised by both claims as long as the state and federal claims "comprise but one *constitutional 'case'.*" *Id.* at 725, 86 S.Ct. at 1138 (emphasis added). Section 1367 provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same *case* or *controversy under Article III.*" 28 U.S.C. § 1367(a) (emphasis added). These two requirements are identical. The court will, therefore, look to the Court's definition of a "constitutional case" in *Gibbs* to define "case or controversy under Article III." *See* 28 U.S.C. § 1367, *reviewed by* David D. Siegel, *Practice Commentary*, 28 U.S.C.A. § 1367 (Supp. 1991).

The Court in *Gibbs* explained that two claims make up one constitutional case if they are both "derive[d] from a common nucleus of operative fact" and a plaintiff "would ordinarily be expected to try (both claims) ... in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. This standard was designed to further judicial economy and promote fairness to the litigants. In determining whether the claims "derive from a common nucleus of operative fact" the Court compared the factual findings required under the respective state and federal laws. *Gibbs*, 383 U.S. at 728, 86 S.Ct. at 1140; *see also Melamed v. Lake County Nat'l Bank*, 727 F.2d 1399 (6th Cir.1984).

██ The primary issue raised by Standard Chartered's third-party complaint will require determinations that would not ordinarily be made in the course of the Trust-

ee's adversary proceeding. The termination of the financing statement and its affect upon Standard Chartered's security interest are issues of fact common to the Trustee's adversary proceeding and Standard Chartered's third-party claim. However, the crux of Standard Chartered's claim is First Union's alleged liability for negligently or intentionally releasing Standard Chartered's security interest. Resolution of this issue will require consideration of evidence concerning the basis for First Union's actions, agreements between these parties, and applicable state law. The bulk of such evidence and applicable state law would not be relevant to the Trustee's adversary claims.

For the foregoing reasons, the court finds that the Trustee's claim and Standard Chartered's third-party claim are not so related that they form part of the same case or controversy which one would ordinarily expect to try in one judicial proceeding. Therefore, the court concludes that Standard Chartered's third-party action is not within the supplemental jurisdiction of this court. Accordingly, First Union's motion to dismiss is granted and the third-party complaint of Standard Chartered Bank is dismissed.

IT IS SO ORDERED.

---

2. Although the *Gibbs* opinion addressed only pendent jurisdiction, the Court made clear in later cases that the test formulated in *Gibbs* applied to ancillary jurisdiction as well. *See*

*Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 370–73, 98 S.Ct. 2396, 2400–02, 57 L.Ed.2d 274 (1978).