**In re RAINBOW SECURITY INC., d/b/a Rainbow Construction, Debtor.**

**W. Joseph BURNS, Trustee in Bankruptcy for Rainbow Security Inc., d/b/a Rainbow Construction, Plaintiff,**

v.

**FIRST CITIZENS BANK & TRUST COMPANY, Defendant and Third–Party Plaintiff,**

v.

**Horace L. FLOWERS, Sr. and Kathleen P. Flowers, Third–Party Defendants.**

Bankruptcy No. B–93–11252C–7W. Adv. No. 93–6002.

United States Bankruptcy Court, M.D. North Carolina, Winston–Salem Division.

March 9, 1994.

W. Joseph Burns, Trustee in Bankruptcy.

Michael P. Flanagan, Greenville, NC, for defendant.

John J. Schramm, Winston–Salem, NC, for third-party defendants.

### MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This adversary proceeding came before the court on February 16, 1994, for hearing upon the third-party defendants' motion pursuant to Federal Rule 12(b)(1) and Bankruptcy Rule 7012 to dismiss the third-party complaint for lack of subject matter jurisdiction. Having considered the briefs filed by the parties and the arguments of their counsel,

**510**

the court has concluded that the motion should be denied.

This adversary proceeding began as a preference action by the trustee against the defendant and third-party plaintiff, First Citizens Bank & Trust Company. The preference claim arose out of a $74,709.94 payment which was made to First Citizens on or about April 8, 1993. First Citizens filed answer denying certain of the preference allegations and raising an affirmative defense in which it asserted, *inter alia*, that the $74,709.94 payment in question had been made to First Citizens by Horace L. Flowers, Sr., an officer and shareholder of the debtor, rather than having been made to First Citizens by the debtor. According to the affirmative defense, Flowers was the initial transferee of the debtor and First Citizens was the immediate transferee of the initial transferee as defined in § 550(a)(2). First Citizens also filed a third-party complaint naming as third-party defendants, Horace L. Flowers, Sr. and Kathleen P. Flowers. In the third-party complaint First Citizens alleged that prior to First Citizens making a loan to the debtor the Flowers had executed and delivered to First Citizens a guaranty of the obligations of the debtor, that the Flowers had secured the guaranty with a deed of trust on real property owned by the Flowers and that First Citizens was entitled to recover from the Flowers all sums which might be recovered by the trustee from First Citizens. First Citizens also alleged that in exchange for the $74,709.90 payment it had released and satisfied the deed of trust from the Flowers which secured their guaranty and prayed that any judgment in its favor against the Flowers be given the same priority and effect that the deed of trust had before it was released and satisfied of record. In addition to filing an answer to the third-party complaint, the Flowers also filed a separate motion to dismiss on the grounds of lack of subject matter jurisdiction.

▆▆▆ In ruling upon the motion to dismiss, the court must look to the pleadings for the facts upon which the jurisdictional determination is to be made. In doing so, the pleadings should be construed in the light most favorable to the party opposing the

motion to dismiss for lack of subject matter jurisdiction. If the complaint states facts sufficient to support the inference that subject matter jurisdiction exists, the motion must be denied. *Espinosa v. Norfolk & Western Railway Co.*, 750 F.Supp. 819, 823 (E.D.Mich.1990). The facts alleged in the complaint, for purposes of the motion to dismiss, are assumed to be true and the complaint should not be dismissed unless it appears to a certainty that jurisdiction would not exist under any state of facts which could be proven in support of the claim alleged in the complaint. *Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982); *see generally* 5A C. Wright & A. Miller, *Federal Practice & Procedure*, § 1350 at 218–220 and § 1363 (1990). While these are standards of consideration which have been applied in the district court under Rule 12(b)(1) of the Federal Rules, they apply with equal force in dealing with motions to dismiss which are filed in adversary proceedings pending in the bankruptcy court. Accordingly, the court will be guided by these same standards in dealing with the motion to dismiss which presently is before the court.

▆▆▆ The trustee's preference action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(f) and, as such, clearly within the jurisdiction of the bankruptcy court pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(b)(1) and the reference from the district court. Without questioning such jurisdiction over the trustee's preference action the third-party defendants argue that the bankruptcy court lacks jurisdiction over the third-party claim which has been asserted against them. The third-party defendants assert that the third-party claim is not a matter or proceeding "arising under" Title 11 or "arising in or related to" a case under Title 11 and therefore is outside the jurisdiction granted by 28 U.S.C. § 1334. In dealing with the jurisdiction question raised in this case it is not necessary to distinguish between proceedings "arising under", "arising in a case under" or "related to a case under" Title 11. This is true because these statutory references operate conjunctively to define the scope of jurisdiction under § 1334. It is necessary only to determine whether a matter is at least "relat-

ed to" the bankruptcy case. If so, jurisdiction exists and the motion to dismiss for lack of jurisdiction must be denied. *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987); *In re Opti-Gage, Inc.,* 128 B.R. 189, 193 (Bankr. S.D.Ohio 1991).

■ While not the only test for determining when a matter is "related" to a bankruptcy case, one such test which is appropriate is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. This test is widely accepted in cases which have been decided at the circuit court level, the district court level and the bankruptcy level and is the test which is adopted in the present case. Unfortunately, the application of the test has been far less consistent than has been the acceptance of the test. The result is that some cases seemingly have reached opposite conclusions regarding jurisdiction when applying the same test to fact situations which are very similar. In attempting to resolve the jurisdiction question in this case the court has looked primarily to those cases involving suits or third-party claims against guarantors or sureties of a debtor's obligations which were brought by a creditor or some party other than the trustee or the debtor. Even with this narrowed scope of consideration the cases are not entirely consistent. However, in this case the court is convinced that the cases which have sustained jurisdiction over claims against such guarantors and sureties are correct and that jurisdiction should be sustained in the present case. *In re Red Ash Coal & Coke Corp.,* 83 B.R. 399 (Bankr.W.D.Va.1988), involved the question of whether the bankruptcy court had jurisdiction over a claim by a creditor against the guarantor of a debtor's obligations which had been removed to the bankruptcy court as a part of a suit which had been pending in the state court. The court recognized that a guarantor who paid a debt of the debtor would have a claim for indemnity and concluded that the outcome of the suit against the guarantor necessarily would affect that creditor's status, vis-a-vis, other creditors. As a result the court reasoned that the administration of the estate therefore depended to some degree upon the outcome of the proceeding involving the guaran-

tor, which meant that the proceeding therefore was related to the bankruptcy case and hence within the jurisdiction of the bankruptcy court. A similar result was reached in *In re Dak Manufacturing Corp.,* 73 B.R. 917 (Bankr.N.J.1987), which also involved the removal to the bankruptcy court of a state court case involving a claim against guarantors of obligations of the debtor. In holding that "related to" jurisdiction over the claim against the guarantors existed the court said:

"The Court notes the absence in the pleadings of reference to a specific written indemnification agreement, or guarantee executed by Coordinated. Nevertheless, the court in *Pacor* [743 F.2d 984 (3rd Cir.1984)] specifically stated that even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect the creditor's status, vis-a-vis, other creditors, and that the administration of the estate therefore depends upon the outcome of that litigation. *Pacor,* 743 F.2d at 995."

In accord, *In re Express Liquors, Inc.,* 65 B.R. 952 (Bankr.D.Md.1986), in which the Court exercised jurisdiction over guarantors who were brought into an adversary proceeding as third-party defendants, with the third-party claim being treated as a core proceeding.

In the present case the court is not willing to say that the outcome of the third-party claim against the Flowers could not conceivably have any effect upon the administration of the debtor's estate. Assuming that the trustee recovers from First Citizens in the underlying preference action, the outcome of the third-party action will determine which party to the third-party action will be a creditor of the estate—if First Citizens loses both the preference action and the third-party action then First Citizens will be a creditor of the estate upon payment of the preference recovery. On the other hand, if First Citizens loses the preference action and wins the third-party action, then the creditor of the estate emerging from this litigation will be the Flowers. This could have a significant effect upon the administration of the estate, since the estate might very well have

defenses against the third-party defendants, as officers, shareholders and insiders of the debtor corporation, which it would not have if First Citizens were the creditor. An illustrative example of how the outcome of an adversary proceeding might affect the administration of the estate for purposes of a "related to" jurisdictional determination appears in *In re Wood*, 825 F.2d 90 (5th Cir.1987). In that case an adversary proceeding was filed against the debtor and a non-debtor seeking damages for wrongful appropriation of corporate assets. As to the debtor, the court had no trouble finding that the proceeding could have an effect on the estate and therefore was within the jurisdiction of the bankruptcy court. This was true because the action sought to recover or adjust certain stock holdings or interests which were part of the estate of the debtor. Jurisdiction over the non-debtor defendant raised different questions but nevertheless was sustained on the grounds that the claim against the non-debtor might affect the administration of the estate and hence was within the "related to" jurisdiction of the court. In explaining how the outcome of the claim against the non-debtor might affect the estate the court said:

> "The plaintiff has filed one complaint against the defendants seeking liability for their joint conduct. Success against any of the defendants will have a potential effect on the estate. For example, if [the debtor] is held liable but Barham [the non-debtor defendant] is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a part of the judgment."

Under the reasoning in the *Wood* case, it is entirely appropriate for the court to consider the fact that the effect of the third-party claim might be to substitute the Flowers as creditors in place of First Citizens and that this involves a substitution or change of creditors might very well affect the dividend to be paid to other creditors which obviously affects the administration of the estate.

It also is significant from a jurisdictional standpoint that the third-party defendant is closely and extensively intertwined with the parties involved in the transaction giving rise to the alleged preferential payment. In that regard it is alleged by First Citizens that at the time of the alleged preferential payment the debtor corporation was under the complete dominion and control of Mr. Flowers such that the debtor was the alter ego of Mr. Flowers. On the basis of such allegations, First Citizens alleges that it was Mr. Flowers who received the sale proceeds with which the $74,709.94 payment to First Citizens was made and that First Citizens was a transferee of Mr. Flowers and not the debtor. First Citizens also argues that Mr. Flowers exercised his control over the debtor and the making of the payment in order to benefit himself by paying an obligation he had guaranteed and obtaining the release of the deed of trust he and his wife gave to secure their personal guaranty. Such involvement and intertwining of parties bolsters the conclusion that the claim against the third-party defendants is "related to" the core proceeding against First Citizens and the underlying bankruptcy case under Title 11. *See In re Salem Mortgage Co.*, 783 F.2d 626 (6th Cir. 1986), and *In re Opti–Gage, Inc., supra.*

Since the third-party claim against the Flowers is at least a "related proceeding" within the meaning of 28 U.S.C. § 1334 and 28 U.S.C. § 157, the motion to dismiss filed on behalf of the third-party defendants should be overruled and an order will be entered by the Court doing so, in accordance with this memorandum opinion.