In re REMINGTON DEVELOPMENT
GROUP, INC., Debtor.

John BOYAJIAN, Trustee, Plaintiff,

v.

Shirley DeLUCA, Defendant
and 3rd Party Plaintiff,

v.

Keven A. McKENNA, 3rd
Party Defendant.

Bankruptcy No. 93–13020.
Adv. No. 94–1214.

United States Bankruptcy Court,
D. Rhode Island.

April 11, 1995.

Stephen A. Rodio, Rodio & Brown, Providence, RI, for Shirley DeLuca.

Keven A. McKenna, Providence, RI, pro se.

John Boyajian, Trustee, Boyajian, Harrington & Richardson, Providence, RI, for trustee.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.*

In this adversary proceeding, third-party defendant Keven A. McKenna ("McKenna") has moved to dismiss the third-party complaint. The motion poses the question whether this court has 28 U.S.C. § 1334 "related-to" jurisdiction or 28 U.S.C. § 1367 "supplemental" jurisdiction over a third-party dispute between non-debtors. For the reasons set forth below, I conclude jurisdiction is lacking and grant the motion to dismiss.[1]

### Background

Remington Development Group, Inc., ("Remington" or "debtor") filed a voluntary Chapter 11 petition on December 1, 1993. John Boyajian, who was subsequently appointed Chapter 11 trustee, initiated this ad-

---

* For the District of Maine, sitting by designation.

1. This memorandum sets forth conclusions of law upon which the court's earlier-announced decision to dismiss the third-party complaint is based.

Unless otherwise noted, all references to statutory sections are to Title 28 of the United States Code.

versary proceeding against Shirley DeLuca ("DeLuca"), objecting to her claim, seeking a declaration that Remington received funds from her in usurious loan transactions per Rhode Island General Laws § 6–26–4, and asking that a judgment be entered against her for all payments previously made by Remington. DeLuca answered; asserting *inter alia*, that she did not advance funds to Remington as "loans." She filed a third-party complaint against McKenna, seeking indemnification to the extent she might be found liable to the trustee.[2] McKenna moved to dismiss for lack of subject matter jurisdiction, Fed.R.Bankr.P. 7012(b),[3] and, in the alternative, for abstention.

### *Discussion*

#### 1. *The Dismissal Standard.*

■ In ruling upon the motion to dismiss, "whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the [third-party] complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cioffi v. Old Stone Bank (In re C.A.C. Jewelry, Inc.),* 124 B.R. 419, 421 n. 3 (Bankr.D.R.I.1991); *Realty Data, Inc. v. Lanciaux (In re Lanciaux),* 76 B.R. 254, 256 (Bankr.D.R.I.1987). *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993) ("In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs.") (citing *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 988 (1st Cir.1992)). *See* 5A Wright & Miller, *Federal Practice and Procedure:* Civil 2d §§ 1350, 1363 (1990) [hereinafter "*Wright & Miller*"].

#### 2. *Facts.*

Remington received a total of approximately $240,000.00 from DeLuca during May, June and July of 1993 in three transactions.[4] Remington used the funds to "purchase various art pieces, antiques, furniture and/or property from various estates." A portion of the proceeds from planned auction sales of these items was to be paid over to DeLuca. Third–Party Complaint at 2. Remington repaid DeLuca no more than $100,000.00 plus some undefined "share" of auction proceeds in the period preceding its bankruptcy filing. *Id.* at 2–3.

During the course of the Remington–DeLuca transactions, DeLuca met McKenna, a Rhode Island attorney. He helped resolve several disagreements between Remington and DeLuca. *Id.* at 3. In addition, he prepared or reviewed documentation for the Remington–DeLuca dealings, and gave DeLuca related legal advice. *Id.* at 3–4. DeLuca asserts that if she is unable to enforce her rights against Remington or is liable to Remington as a consequence of her relationship to it, it was because McKenna breached one or more state law duties to her.[5]

#### 3. *The Parties' Contentions.*

DeLuca posits alternative bases for bankruptcy court jurisdiction over the third-party complaint. First, she asserts that the third-party dispute is "related-to" Remington's bankruptcy proceeding. 28 U.S.C. § 1334(b). Second, DeLuca contends that this court may exercise "supplemental" jurisdiction pursuant to 28 U.S.C. § 1367 because the trustee's action and the third-party complaint have "the identical common nucleus of facts." DeLuca's Objection To McKenna's Motion To Dismiss at 3. She adds that this court can hear the matter because it meets Fed.R.Civ.P. 14(a)'s (as incorporated by Fed.R.Bankr.P. 7014) requirements for impleader actions.

---

2. DeLuca's prayer for relief may be read to include damages claims, over and above indemnification, against McKenna. DeLuca has also commenced a state court action against McKenna. It continues to pend. DeLuca's Objection To McKenna's Motion To Dismiss at 6.

3. Fed.R.Bankr.P. 7012 incorporates Fed.R.Civ.P. 12(b)–(h).

4. DeLuca's rights to a return of, or on, the funds was secured either by real estate mortgages or a security interest in personal property and its proceeds. Third–Party Complaint at 1–5.

5. DeLuca has neither alleged nor argued that she holds bankruptcy-based federal claims against McKenna.

### 4. General Jurisdictional Provisions.

Section 1334 provides that district courts shall have "original and exclusive" jurisdiction of "all cases under title 11," § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." § 1334(b). The district courts may refer bankruptcy jurisdiction to bankruptcy courts: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." § 157(a). The United States District Court for the District of Rhode Island, by its standing Order of Reference dated July 18, 1984, has provided for such referral to bankruptcy judges in the District of Rhode Island.[6]

■■■ DeLuca's third-party action does not "arise under" title 11 because it derives from state law, rather than federal bankruptcy law. See In re Wood, 825 F.2d 90, 96–97 (5th Cir.1987). It does not "arise in" the bankruptcy case because DeLuca can bring her action outside the context of Remington's bankruptcy case. Id. at 97. If the third-party complaint is within this court's jurisdiction at all, it must be because it is "related-to" Remington's bankruptcy proceeding. See 1 Norton Bankruptcy Law and Practice 2d § 4:39 at 4–234 (1994) [hereinafter "Norton"].[7]

"Related-to" jurisdiction is the most expansive component of § 1334(b). See, e.g., In re Arnold Print Works, Inc., 815 F.2d 165, 167 (1st Cir.1987); In re Walker, 168 B.R. at 118–19. As the following analysis reveals,

however, even under the broadest construction of "related-to" jurisdiction, the connection between DeLuca's third-party complaint and Remington's Chapter 11 bankruptcy is too tenuous to tether it to this court's judicial power.

### 5. Related–To Jurisdiction: You Can't Get There From Here.

#### a. The Applicable Standard.

■ Generally speaking, related-to bankruptcy jurisdiction extends to matters "concerned only with State law issues that did not arise in the core bankruptcy function of adjusting debtor-creditor rights." In re Arnold Print Works, Inc., 815 F.2d at 167. See In re El San Juan Hotel Corp., 149 B.R. 263, 270 (D.P.R.1992) (describing related-to cases as "'those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court.'") (citations omitted). See generally 1 Norton § 4:39.

■ To define the reach of related-to jurisdiction, the bankruptcy court for this district utilizes the generally-adopted standard set out by the Third Circuit:

[T]he test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either posi-

---

**6.** Section 157 also distinguishes between "core" and "noncore" proceedings. § 157(b)(2). See In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991) (citing § 157(b)(2); In re Gardner, 913 F.2d 1515, 1518 (10th Cir.1990)). See also In re Parque Forestal, Inc., 949 F.2d 504, 509–10 (1st Cir.1991) (discussing allocation of judicial power between district court and bankruptcy court in core and noncore matters). DeLuca's third-party complaint against McKenna is based on state law principles of fiduciary duty, negligent misrepresentation and professional malpractice. Although the concession is of no moment in the context of the pending motion, she appropriately concedes that the third-party action is not a "core" proceeding. See In re C.A.C. Jewelry, Inc.,

124 B.R. at 421. See also Walker v. Cadle Company Inc. (In re Walker), 168 B.R. 114, 120 n. 4 (E.D.La.1994) ("[T]he fact that the main claim [is] indisputably core [does] not make a third-party complaint by the defendant 'core'.") (citing In re Summit Airlines, Inc., 160 B.R. 911 (Bankr. E.D.Pa.1993)).

**7.** DeLuca does not attempt to show that her claims against McKenna are based on either express or implied federal bankruptcy law principles. Hers is strictly a state law cause of action. Cf. In re Walker, 168 B.R. at 118 (rejecting notion that defendant's third-party contribution claim is implicitly created by federal bankruptcy law).

tively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). *See In re C.A.C. Jewelry, Inc.,* 124 B.R. at 422; *In re Lanciaux,* 76 B.R. at 256. *See also In re Parque Forestal, Inc.,* 949 F.2d at 509 (remarking that *Pacor* provides a "broad construction" of related-to jurisdiction, without adopting the test for all cases); *In re G.S.F. Corp.,* 938 F.2d at 1475 (recognizing *Pacor* as the "usual articulation" of the related-to jurisdiction test); *Flores Rivera v. Telemundo Group,* 133 B.R. 674, 675 (D.P.R.1991) (noting that most circuits have adopted the *Pacor* test); *Philippe v. Shape, Inc.,* 103 B.R. 355, 356 (D.Me.1989) (applying *Pacor* test); *In re Videocart, Inc.,* 165 B.R. 740 (Bankr. D.Mass.1994) (applying *Pacor* test); *In re Summit Airlines, Inc.,* 160 B.R. at 922 (survey of circuits applying *Pacor*). *But see In re Turner,* 724 F.2d 338, 341 (2d Cir.1983) (requiring a "significant connection" to the bankruptcy estate); *In re Pettibone Corp.,* 135 B.R. 847, 849–50 (Bankr.N.D.Ill.1992) (describing a narrower Seventh Circuit test requiring that resolution of the case "affects the amount of property available for distribution or the allocation of property among the creditors.").[8]

### b. *Third–Party Complaints: Non–Debtor Disputes.*

I start with Judge Votolato's observation: "At best, our jurisdiction to adjudicate a dispute between two non-debtors is tenuous.... 'In the absence of any tangible effect on the bankruptcy case, bankruptcy courts have regularly concluded that they lack jurisdiction to resolve claims by non-debtors against other non-debtors.'" *In re C.A.C. Jewelry, Inc.,* 124 B.R. at 422 (cita-

tions omitted). *See In re Walker,* 168 B.R. at 119 (collecting cases and noting that, under the *Pacor* test, jurisdiction is wanting for the "vast majority" of third-party complaints); *In re Summit Airlines, Inc.,* 160 B.R. at 922–23 (same).

Those third-party disputes over which related-to jurisdiction may exist often involve potential indemnification claims against the estate by the third-party defendant. For example, in *Philippe v. Shape, Inc.,* 103 B.R. at 356, third-party claims against a corporate debtor's insiders were determined to be within related-to jurisdiction because if found liable to the third-party plaintiff, the insiders unconditionally were entitled to indemnification under the debtor's by-laws. Such liability "would necessarily affect the administration of the ... bankruptcy estate, as some part of the estate otherwise owing to existing creditors would be susceptible to being diverted to meet this indemnity obligation." *Id.* at 358. *See In re G.S.F. Corp.,* 938 F.2d at 1475–76 (delay in the administration of the estate, and potential indemnity claim against the estate was sufficient to provide related-to jurisdiction); *Salem Mill, Inc. v. Wisconsin Tool and Stamping Co. (In re Salem Mill, Inc.),* 148 B.R. 505 (Bankr.N.D.Ill.1992) (potential indemnification claim against debtor conferred related-to jurisdiction) (applying Seventh Circuit test).

But not every potential indemnification claim against the debtor will satisfy related-to jurisdiction requirements. *Philippe* was careful to distinguish *Central Maine Restaurant Supply v. Omni Hotels Management Corp.,* 73 B.R. 1018 (D.Me.1987), in which the district court found related-to jurisdiction lacking because the right to indemnification from the debtor was contractually uncertain. *Philippe,* 103 B.R. at 357.[9] Thus,

---

**8.** Because I conclude that DeLuca's third-party complaint is without this court's jurisdiction under the expansive *Pacor* formulation, it is unnecessary to reach the question whether the First Circuit would follow *Pacor* or some narrower conception of related-to jurisdiction.

**9.** Similarly, a Massachusetts bankruptcy court, remanding an action removed from state court, recently held there was not a "sufficient nexus to or effect on" the bankruptcy estate to confer related-to jurisdiction over a dispute between

non-debtors, even though its outcome could possibly lead to debtor liability:

> The appearance of the plaintiff as a creditor in the Debtor's schedules is irrelevant. The present action is by a non-debtor against non-debtors. A recovery by the plaintiff against the defendants will not directly affect the Debtor's bankruptcy estate. The defendants might have contribution claims against the Debtor in the future if the plaintiff is successful. However, this is only a precursor to the potential contri-

the most that can be said with assurance is that some third-party, non-debtor disputes may fall within the bankruptcy court's related-to jurisdiction *if* resolution of that dispute may give rise to claims that affect the bankruptcy estate.

■ In this case, a successful third-party claim would only establish McKenna's liability to DeLuca. It would create no rights or liabilities on the debtor's account. *See Kandel v. Wampum Hardware (In re K & R Mining, Inc.)*, 135 B.R. 269, 271–72 (Bankr. N.D.Ohio 1991) (distinguishing indemnification claims between third parties from those against debtors). As stated in *Neill v. Borreson (In re John Peterson Motors, Inc.)*, 56 B.R. 588 (Bankr.D.Minn.1986):

> [T]he outcome of the third party action in this case cannot conceivably have any effect on the debtor's estate. . . . The dispute is between two non-debtors over who should be ultimately responsible for sums recovered from [the defendant] in the main action.

> A claim for indemnity or contribution, if successful, will merely adjust the rights between the defendant and the third-party defendant. The defendant alone remains potentially liable to the plaintiff in the main action.

As it stands, the trustee will recover preferences from [the defendant] or he will not. If the trustee prevails, [the defendant] will seek reimbursement from [the third-party defendant]. The third-party action will have no bearing on whether or to what extent the estate recovers allegedly preferential payments. Thus, even under this liberal test, [the] third-party complaint is not a related proceeding and therefore falls outside of the jurisdictional grant of 28 U.S.C. § 1334.

*Id.* at 591 and n. 4 (applying *Pacor* test to preference defendant's third-party claim against a non-debtor).[10] This case presents not even a contingent possibility that DeLuca's success against McKenna will alter (one way or the other) the estate's assets, liabilities or anticipated distributions to Remington's creditors. *See In re K & R Mining, Inc.*, 135 B.R. at 271–72 ("extremely tenuous connection" to the estate not enough even under "conceivable effect" test).[11]

#### c. The Collectability Connection.

■ DeLuca contends that the outcome of her third-party dispute could affect the bankruptcy estate because, should she be successful against McKenna, it would "enhance the collectability" of any judgment the trustee

---

bution claim, and is too tenuous and speculative an event at this point in time to confer 'related to' jurisdiction.
*In re Videocart, Inc.*, 165 B.R. at 744.

10. *See Rouse v. Pinegar Chevrolet, Inc. (In re Chambers)*, 125 B.R. 788, 793 (Bankr.W.D.Mo. 1991) (dismissing third-party complaint for indemnification against non-debtor pursuant to *Pacor* because "[n]either the amount of property available for distribution, nor the allocation of property among creditors, is affected by the dispute"); *Scott v. Equitable Federal Savings and Loan Association (In re German)*, 97 B.R. 373, 375 (Bankr.S.D.Ohio 1989) (same) (citing *Fietz v. Great Western Fin. Corp. (In re Fietz)*, 852 F.2d 455, 458 (9th Cir.1988); *Kaiser Steel Corporation v. Frates (In re Kaiser Steel Corporation)*, 95 B.R. 782 (D.Colo.1989); *Maislin Industries, U.S., Inc. v. Certified Brokerage Sys., Inc. (In re Maislin Industries, U.S., Inc.)*, 75 B.R. 170, 172 (Bankr. E.D.Mich.1987); *In re John Peterson Motors, Inc.*, 56 B.R. at 591). *Cf. Burns v. First Citizens Bank & Trust Co. (In re Rainbow Security, Inc.)*, 173 B.R. 508, 511–12 (Bankr.M.D.N.C.1994) (finding related-to jurisdiction where result of third-party complaint may cause both a substitu-

tion of creditors and a change in dividend); *Barber v. Riverside International Trucks, Inc. (In re Pearson Industries, Inc.)*, 142 B.R. 831, 849–50 (Bankr.C.D.Ill.1992) (concluding that where "third-party complaints involve a dispute between non-debtors which will merely determine which party will ultimately be responsible in the event that one of the nondebtors is found liable in the underlying adversary proceeding, jurisdiction is lacking") (employing Seventh Circuit test).

11. In *Spaulding & Co. v. Buchanan (In re Spaulding & Co.)*, 131 B.R. 84, 89 (N.D.Ill.1990), the court identified one remote contingency which could affect the allocation of funds to creditors. The third-party defendant could file a proof of claim against the debtor for the cost of indemnifying the third-party plaintiff. But, as no such proof of claim had yet been filed, the possibility was remote enough that it did not meet the related-to test. 131 B.R. 84, 89 (N.D.Ill.1990) (using Seventh Circuit's narrow related-to test). In this case, not even such a remote contingency exists.

might obtain against her. DeLuca's Objection To McKenna's Motion To Dismiss at 4.[12]

DeLuca's position does find some support in case law. In *Hawkins v. Eads (In re Eads)*, 135 B.R. 387 (Bankr.E.D.Cal.1991), the trustee sued the debtors and their transferee to avoid certain unauthorized transfers. The transferee brought a third-party complaint against his attorney and financial planner for indemnification based on breach of contract, legal malpractice and fraud. Addressing jurisdiction, the court commented that:

> the argument in support of relatedness under the prevailing test is that the possibility of recovery on the third-party complaint enhances the collectability of any judgment against the [primary] defendants. Ultimately, it adds to the potential sources of payment. Thus, it is argued, the trustee's options and freedom of action are enhanced. This is a good argument *in the context of this case.*

*Id.* at 393 (emphasis supplied). *Eads* concluded that related-to jurisdiction existed, but noted that its conclusion was not free from doubt.[13]

I decline to follow *Eads'* lead on the issue whether DeLuca's potential recovery against McKenna enhances the chance that the estate might collect any obligation that DeLuca may owe it. First, on the question of related-to jurisdiction, *Eads* is, at best, a timid holding. The opinion limits its jurisdictional determination to "the context of this case,"

but sets forth no explication as to what about the case made its conclusion apt. 135 B.R. at 393. Moreover, because the *Eads* court was unsure of its conclusion that jurisdiction existed under § 1334, it embarked on substantial, additional analysis leading to the alternative conclusion that there was jurisdiction under the supplemental jurisdiction statute, § 1367. 135 B.R. at 393–98.

Although in considering a motion to dismiss I must draw all reasonable inferences in favor of the challenged claim, "[n]othing suggests that [the defendant] will need to collect upon the judgment it seeks against [the third-party defendant] to pay the judgment [the debtor] seeks against it. Moreover, even if true, such a connection must be held to be 'extremely tenuous.'" *In re Maislin Industries, U.S., Inc.*, 75 B.R. at 173 (dismissing third-party complaint under the *Pacor* standard) (quoting *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 634 (6th Cir.1986)).

DeLuca's pleadings do not sustain her argument that a successful third-party action against McKenna will redound to the benefit of the estate. Even if it were true, the character of the third-party claim and its relationship to the estate is too attenuated to support § 1334 related-to jurisdiction.

6. *Supplemental Jurisdiction: You Can't Get Here From There.*

▇ DeLuca invokes § 1367 as an alternative jurisdictional basis for her third-party

---

12. DeLuca also argues, albeit in cursory fashion, that related-to jurisdiction may additionally be based on a "common nucleus of facts" between the *trustee's complaint* and the third-party complaint. Such factual relatedness, however, has no bearing on related-to jurisdiction under §§ 157 and 1334. *See Pacor, Inc. v. Higgins*, 743 F.2d at 994; *DaSilva v. American Savings*, 145 B.R. 9, 12 (S.D.Tex.1992) ("[n]either common issues, related parties, parallel claims nor bankruptcy law applications make a case related to a bankruptcy....") (remanding after removal); *Philippe v. Shape, Inc.*, 103 B.R. at 356 (explaining that the *Pacor* test "focuses on the potential effect upon the estate itself, rather than upon the amount of overlap of the facts underlying the proceedings"); *In re Pettibone Corp.*, 135 B.R. at 851; *In re Opti-Gage, Inc.*, 128 B.R. 189, 196 (Bankr.S.D.Ohio 1991); *In re Maislin Industries, U.S., Inc.*, 75 B.R. at 172 (rejecting argument that "because the complaint and the third-party

complaint require the resolution of common issues of fact and law, principles of judicial economy and convenience to the parties suggest that the two complaints should be resolved concurrently"; noting that the test of related-to jurisdiction regards what effect there is on the bankruptcy estate).

13. *Eads* acknowledged that "[i]ndemnity claims between nondebtors, one of whom is indebted to the estate, have been found to be not related to the administration of a bankruptcy estate within the meaning of 28 U.S.C. § 1334(b) by some courts applying the *Pacor* [test]." *Id.* at 393 and n. 9 (citing *In re German*, 97 B.R. at 375). Applying *Pacor's* expansive test, the court cautioned that "the more one must stretch to find an 'effect' on the estate, the greater the chance that a trial or appellate court will find subject-matter jurisdiction wanting." 135 B.R. at 393.

claim.[14] District courts may, in their discretion,[15] exercise supplemental jurisdiction. Section 1367(a) provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

DeLuca argues that her third-party complaint shares an "identical common nucleus of facts" with the trustee's complaint and that, in the interest of judicial economy, this court should exercise its discretion to hear her claim pursuant to § 1367. DeLuca's Objection To McKenna's Motion To Dismiss at 3 (citing § 1367(c)). *See Vera–Lozano v. International Broadcasting,* 50 F.3d 67, 70 (1st Cir.1995) (§ 1367 codifies principles of ancillary and pendent jurisdiction as articulated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)); *Scott v. Long Island Savings Bank,* 937 F.2d 738, 742 n. 4 (2d Cir.1991). *See generally* 13 *Wright & Miller:* Jurisdiction 2d § 3523 (Supp.1994).

Whether § 1367 supplements § 1334 bankruptcy jurisdiction, as it may be referred by a district court to the bankruptcy court pursuant to § 157(a), is an open question. No court of appeals has yet ruled on the issue. I start from the premise that "[b]ankruptcy courts are courts of limited jurisdiction, with their scope defined by statute." *In re Majestic Energy Corp.,* 835 F.2d 87, 89 (5th Cir.1988) (discussing interrelation of §§ 157 and 1334).[16]

Examining the statutory sections that establish bankruptcy jurisdiction (§ 1334) and permit its referral from the district court to the bankruptcy court (§ 157(a)), the limitations that preclude the bankruptcy court's exercise of supplemental jurisdiction become apparent. Section

---

**14.** DeLuca also cites to Fed.R.Civ.P. 14(a) (as incorporated by Fed.R.Bankr.P. 7014) in support of her jurisdictional argument. Rule 14(a) provides that a third-party complaint can be maintained only "upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."

DeLuca concludes that by complying with this rule, she has provided a sufficient basis upon which this court may adjudicate her third-party complaint. This argument is misplaced. Rule 14(a) is a procedural rule whose requirements are *necessary* to a proper impleader action. But Rule 14(a) compliance is not *sufficient* (nor even pertinent) to support bankruptcy court jurisdiction. The Advisory Committee Note to Fed.R.Bankr.P. 7014 states:

> This rule does not purport to deal with questions of jurisdiction.... [W]hether the doctrines of pendent or ancillary jurisdiction are applicable to adversary proceedings will be determined by the courts.

*See* Fed.R.Civ.P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts...."). *See also Sullivan v. Hochfelder,* 834 F.Supp. 1036, 1038 and n. 2 (N.D.Ill.1993) ("Federal Rules of Civil Procedure can neither create nor withdraw jurisdiction.") (citing Fed.R.Civ.P. 82; *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978)).

If I were to conclude that § 1367's federal court supplemental jurisdiction applied to proceedings in the bankruptcy court, reference to Rule 14 would be instructive in illuminating the contours of "ancillary" jurisdiction over state law claims. *See In re Eads,* 135 B.R. at 393–94.

**15.** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

**16.** The Supreme Court, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that the jurisdictional provisions of the Bankruptcy Reform Act (1978) were unconstitutional because they impermissibly delegated Article III powers to Article I judges. Congress responded, in part, by including § 157 in the Bankruptcy Amendments and Federal Judgeship Act of 1984. Under the amended statute, the district courts' delegation of judicial power to the bankruptcy courts was more expressly limited and precisely delineated. *See generally* 1 Norton § 4:18.

1334(a) confers upon the *district* court "original and exclusive jurisdiction of all cases under title 11." Section 1334(b) adds that "the *district* courts shall have original, but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." (emphasis supplied). Section 157(a) enables the district court's bankruptcy jurisdiction to be delegated to the bankruptcy court through an order of reference. *See Jones v. Mayhone (In re Mayhone)*, 165 B.R. 264, 266 (Bankr. W.D.Ark.1994). In addition to authorizing such a reference, § 157(a) expressly limits the reference's permissible extent: "Each district court may provide that any or all cases under title 11 and any or all proceedings *arising under* title 11 or *arising in* or *related to* a case under title 11 shall be referred to the bankruptcy judges for the district." (Emphasis supplied). Nowhere does § 157(a) authorize the district court to delegate more than "arising under," "arising in" and "related to" bankruptcy jurisdiction to the bankruptcy court. *See In re Pettibone Corp.*, 135 B.R. at 851 (noting the irrelevance of discussing whether § 157 " 'core' jurisdiction" exists where § 1334 jurisdiction is lacking because "§ 157 is not an independent source of jurisdiction.") (citing *In re Wood*, 825 F.2d at 94–97; *In re Spaulding & Co.*, 131 B.R. at 90).

Section 1367's supplemental jurisdiction grant extends district court jurisdiction virtually to the limits of Article III. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (explaining that Article III contemplates "judicial *power*" over pendent state claims only where they are part of "but one constitutional 'case.' "); *Massachusetts v. Mosbacher*, 785 F.Supp. 230, 238 (D.Mass. 1992) (recognizing that § 1367 grants the district court jurisdiction to the full extent that Article III allows); 13B *Wright & Miller: Jurisdiction and Related Matters 2d* § 3567.3 at 46 (Supp.1994) (same). It would be anomalous to conclude that the bankruptcy court, which obtains jurisdiction by circumscribed statutory reference from the district court, may exercise § 1367 supplemental jurisdiction at the outer limits of Article

III. The § 157(a) reference is the vessel through which jurisdiction may be passed to the bankruptcy courts. Congress constructed that vessel with precise dimensions and limited capacity. Supplemental jurisdiction will not fit within it. To conclude otherwise is asking to run another *Marathon*.

Other courts have reached the same conclusion. In *In re Walker*, 168 B.R. 114 (E.D.La.1994) the district court held that the bankruptcy court lacked § 1334 jurisdiction over third-party contribution claims. The third-party plaintiff argued that § 1367 could nevertheless provide the bankruptcy court with jurisdiction over its claims. The court disagreed, explaining that:

> '[r]elated to' jurisdiction already allows the bankruptcy court to hear, to the extent Congress intended, all supplemental claims that have a conceivable effect on the bankruptcy. It seems counterintuitive, then, that Congress, having given bankruptcy courts only limited judicial power over 'non-core' or 'related to' proceedings, would have intended for bankruptcy courts to nevertheless look to 28 U.S.C. § 1367 as an additional or expanded basis of jurisdiction.

*Id.* at 120.

Recently, a Washington bankruptcy court agreed. After holding that it lacked subject matter jurisdiction under § 1334(b), the court considered § 1367 supplemental jurisdiction:

> 28 U.S.C. § 1367, enacted in 1990, codifies the district courts' ancillary and pendent jurisdiction. As noted by the plaintiffs, a number of courts have concluded that these doctrines provide an additional source of jurisdiction for bankruptcy courts. *See, e.g., In re Eads*, 135 B.R. 387 (Bankr.E.D.Cal.1991). As far as this Court has been able to determine, no circuit court has ruled on the issue. While it may be that the *district courts'* bankruptcy jurisdiction may be augmented by § 1367, this Court does not believe that the statute can be used to expand the limited jurisdiction of *bankruptcy courts* without running

afoul of the Constitution. In *In re Alpha Steel Co., Inc.*, 142 B.R. 465, 471 (M.D.Ala. 1992), the Court tentatively concluded that § 1367 does not apply to bankruptcy courts, stating:

'... [T]here are ... strong ... arguments ... to support the position that the 'relate to' and 'arising in' jurisdictional components of § 1334(b) already allow bankruptcy courts to hear, to the extent congress intended, all supplementary claims that have a logical relationship to an underlying bankruptcy proceeding. First, the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous. Second, to the extent that ancillary and pendent jurisdiction could be viewed as supplementing rather than supplanting 'related to' and 'arising in' jurisdiction, a bankruptcy court exercising the former could hear claims which, in effect, merely relate to claims which themselves have only a relate-to connection with the primary case. Finally, the recent Congressional amendments codifying and merging the doctrines of ancillary and pendent jurisdiction expressly apply only to district courts.'

*Wilcox v. Houghton (In re Houghton)*, 164 B.R. 146, 148 (Bankr.W.D.Wash.1994) (emphasis supplied). *See In re Pettibone Corp.*, 135 B.R. at 851–52.

The opinions concluding that supplemental jurisdiction may be exercised by the bankruptcy court do so without disciplined analysis of §§ 157(a) and 1334(b). For example, *Goger v. Merchants Bank of Atlanta (In re Feifer Industries)*, 141 B.R. 450, 452 (Bankr.

N.D.Ga.1991), states that "there is nothing in § 1367 that suggests bankruptcy courts lack supplemental jurisdiction over such claims." The question should be: Where in § 157(a) can one find authority for the district court to refer such jurisdiction to the bankruptcy court?[17] In *Jones v. Woody (In re W.J. Services, Inc.)*, 139 B.R. 824, 826 (Bankr. S.D.Tex.1992) the court concluded that § 1367 supplemental jurisdiction applies to bankruptcy courts by virtue of 28 U.S.C. § 151, which designates bankruptcy courts as a "unit" of the district court. *Cf. Fisher v. Federal National Mortgage Association (In re Fisher)*, 151 B.R. 895, 899 (Bankr.N.D.Ill. 1993) (recognizing that § 157 strictly limits bankruptcy court jurisdiction and a district court's order of reference). Even *In re Eads*, an opinion that carefully and thoroughly examines the principles underlying supplemental jurisdiction, fails to take the required first step—identifying the statutory vehicle by which the exercise of supplemental jurisdiction may be delegated to the bankruptcy court.[18]

I recognize that judicial economy is, and should be, a strong influence on decisions relating to how and where matters are brought to trial. The bankruptcy courts that invoke supplemental jurisdiction generally do so with self-restraint, intending only to bring all related claims to a comprehensive and consistent conclusion. *See In re Marine Iron & Shipbuilding Co.*, 104 B.R. 976, 985–87 (D.Minn.1989); *In re Summit Airlines, Inc.*, 160 B.R. at 923 (commenting that "most" courts will exercise supplemental jurisdiction, but should not do so except where it is "clearly appropriate"); *In re Feifer Industries*, 141 B.R. at 452–53; *In re Direct Satellite Communications, Inc.*, 91 B.R. 5 (Bankr.E.D.Pa.1988); *In re John Peterson*

---

**17.** The court's mistake may have been rooted in its reliance on *Melamed v. Lake County Nat'l Bank*, 727 F.2d 1399 (6th Cir.1984), for the proposition that a bankruptcy court's exercise of supplemental jurisdiction had met with approval. *Melamed* addressed a case that had been initiated in the district court, where § 1367 jurisdiction clearly lies.

**18.** Instead, the *Eads* court limits its holding to "a statement of the subject-matter jurisdiction of the district court, of which the bankruptcy court is a unit, over third party claims." 135 B.R. at 390. The court read § 157 as merely a provision allocating trial responsibilities between the district judge and the bankruptcy judge, noting that the bankruptcy judge may, with the consent of the parties, hear cases within the jurisdiction of the district court. *Id.* at n. 3.

Motors, Inc., 56 B.R. at 592–93. *See also Zerand–Bernal Group, Inc. v. Cox (Cary Metal Products, Inc.)*, 158 B.R. 459, 464–65 (N.D.Ill.1993), *aff'd*, 23 F.3d 159 (7th Cir. 1994) ("strictly limiting" a bankruptcy court's exercise of ancillary jurisdiction to "unusual circumstances"). But, however well-intentioned, such notions cannot supersede statutory limits on the bankruptcy courts' jurisdiction.[19]

Having determined that DeLuca's third-party action cannot clear § 1334's jurisdictional hurdles, I conclude that § 1367 supplemental jurisdiction does not provide a way around them.[20]

### Conclusion

For the reasons set forth above, the third-party defendant's motion to dismiss the third-party complaint is GRANTED.[21]

A separate order consistent with this opinion shall issue forthwith.

19. [T]he bankruptcy court decisions relied upon by [creditor/third-party plaintiff] invoke notions of judicial economy and procedural convenience as principal justifications for extending to themselves the authority to exercise this kind of supplemental jurisdiction.... [But] 'judicial economy itself does not justify federal jurisdiction.'
*In re Alpha Steel Co., Inc.*, 142 B.R. at 470–71 (collecting cases).

20. The result in this case, leaving DeLuca and McKenna to litigate their differences in state court, is a sensible one. Congress's response to *Marathon* established a "system that utilizes three different courts to exercise various jurisdiction over bankruptcy-related proceedings." 1 *Norton* § 4:17 at 4–88. Unquestionably, the trustee's dispute with DeLuca, a "core" proceeding, belongs in the bankruptcy court. 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims), 157(b)(2)(C) (counterclaims by the estate against persons filing claims). The McKenna/DeLuca dispute, being a state law claim between nondiverse citizens, would not belong in any federal forum unless it were "related to" the bankruptcy case within the meaning of 28 U.S.C. § 1334(b). Though it may be "related" in the colloquial sense, the dispute isn't "related to" Remington's bankruptcy in the jurisdictional sense. Thus, litigation in the state forum is apt.

21. Because this court lacks subject matter jurisdiction over the third-party claim, McKenna's request for abstention is moot.